El Pueblo de Puerto Rico, demandante y apelado *v.* Rosendo Scott, acusado y apelante.

No. 3113.—*Visto:* Mayo 3, 1927. *Resuelto:* Mayo 23, 1927.

1. ARMAS—PORTAR ARMAS PROHIBIDAS—PROCESO Y CASTIGO—EVIDENCIA—PRUEBA DE LA EXISTENCIA DEL ARMA.—Cuando bajo las circunstancias que revelan la portación de una manopla es imposible separar la forma empleada para realizar el delito de portarla, puede preguntarse sobre los efectos del golpe recibido para determinar si fué o no dado con ella y dejar así establecida o no la existencia del arma.

2. ARMAS—PORTAR ARMAS PROHIBIDAS—PROCESO Y CASTIGO—EVIDENCIA—PRUEBA DE LA EXISTENCIA DEL ARMA.—Cuando no se ha ocupado el arma, su existencia en poder del acusado puede demostrarse por otros elementos de prueba y en tal caso los jueces deben proceder con mucha cautela.

3. TESTIGOS—DEL EXAMEN—MODO DE TOMAR EL TESTIMONIO—EXAMEN POR LA CORTE—EN GENERAL.—Atendidas las preguntas y observaciones hechas por la corte en el examen de uno de los testigos *se resolvió:* de ellas nada podía derivarse que hubiera influído en dicho testigo a manera de amenaza o temor para que dijera una falsedad.

4. ARMAS—PORTAR ARMAS PROHIBIDAS—PROCESO Y CASTIGO—EVIDENCIA—ADMISIBILIDAD.—En éste caso se objetó la introducción de una manopla como prueba porque su hallazgo fué demasiado remoto al momento en que ocurrieron los hechos en que aquélla se portaba. *Se resolvió:* que tal prueba

era admisible como evidencia circunstancial y que su valor probatorio podía considerarse en relación con los demás elementos de prueba.

5. DERECHO PENAL—APELACIÓN Y ERROR, Y CERTIORARI—REVISIÓN—CUESTIONES SOBRE LAS PRUEBAS—APRECIACIÓN DE LAS MISMAS—PRUEBA CONTRADICTORIA. —Cuando la prueba es contradictoria y no existe error fundamental, o pasión, prejuicio o parcialidad en la apreciación que de toda ella en conjunto hizo el juez sentenciador, procede confirmar la sentencia apelada.

SENTENCIA de *Angel Acosta,* J. (Mayagüez), condenando al acusado por delito de portar armas. *Confirmada.*

*Pedro Baigés Gómez* y *José Sabater,* abogados del apelante; *José E. Figueras,* abogado de *El Pueblo,* apelado.

EL JUEZ ASOCIADO SEÑOR FRANCO SOTO, emitió la opinión del tribunal.

Rosendo Scott fué acusado de portar una manopla y la corte le condenó a sufrir sesenta días de cárcel.

[1, 2] La prueba de cargo tendió a establecer que el acusado portaba una manopla cierta noche y en ocasión que sostenía una riña con Angel Rovira Grañas. Este declaró y refiere, en síntesis, que en momentos en que pasaba por la Bolsa, en la ciudad de Mayagüez, fué llamado por el acusado y dirigiéndose ambos hacia el barrio de París, al llegar a una parte bastante oscura, el acusado le dió un golpe en la cara con una manopla; que vió cuando el acusado se quitó y tiró la manopla, la que pudo ver porque estaba frente a los focos de un automóvil que alumbraba cuando eso ocurría.

En el curso de la declaración de este testigo, la defensa hacía objeción a toda pregunta que tendiera a establecer las consecuencias del golpe que recibiera el testigo Rovira, alegando que no se estaba investigando un delito de acometimiento y agresión. Muchas de las objeciones a ese particular fueron sostenidas por la corte inferior. Sin embargo, a preguntas de la corte el testigo dijo que el círculo amoratado que tenía en el ojo derecho era el efecto del golpe que recibió con la manopla, la que vió cuando se la quitaba el acusado de la mano. También hizo indicación el testigo de una rotura del hueso y de una radiografía. Del récord

aparece que la defensa tomó excepción a todo este interrogatorio que hizo la corte.

En buena lógica, bajo las circunstancias en que el testigo relata haber el acusado revelado portar una manopla, era una imposibilidad metafísica hacer una separación de la forma o modo que el acusado había empleado para realizar el delito de portar armas prohibidas. A nuestro juicio la corte pudo, por otra parte, preguntar acerca de los efectos del golpe que había recibido el testigo Rovira para determinar conscientemente si el simple golpe de puño podía haber dejado los vestigios físicos que presentaba el testigo Rovira, o si necesariamente fué el de un instrumento de efecto más brutal y contundente, como el de una manopla. Eran, por consiguiente, datos o indicios de una prueba circunstancial que la corte inferior la tenía a la vista y podía apreciarla en relación con la demás prueba para dejar o no establecida la existencia del arma, ya que como cuestión legal, si no se había ocupado la misma, su existencia en poder del acusado podía demostrarse por otros elementos de prueba. *El Pueblo* v. *Nieves,* 35 D.P.R. 53, y *El Pueblo* v. *Juliá,* 18 D.P.R. 940.

[3] El testigo Juan R. Rivera declara que iba con Henry Barreda en automóvil por la calle que conduce a la estación agronómica de Mayagüez, cuando se encontraron que Scott y Rovira estaban peleando y pudo notar que Scott se quitaba algo de la mano y lo botaba. En este momento aparece del récord que ocurrió el siguiente incidente:

"El Juez hizo la siguiente pregunta al testigo: ¿Qué botaba, señor, Ud. ha prestado un juramento y tiene la obligación de decir la verdad, qué fué lo que Ud. vió que botaba? Y el testigo contestó: Una manopla. Y continuó declarando a preguntas del Juez: que le vió la manopla en la mano, un instrumento.

"El Juez hizo la siguiente pregunta. 'Aquí se viene a decir la verdad bajo el juramento prestado, y al que no diga la verdad la Corte se reserva la decisión respecto de ellos para que vaya al Gran Jurado a defenderse.' (Y el testigo contestó: 'Botaba una manopla.)"

El apelante no hizo objeción ni tomó excepción a ninguna de estas preguntas y respuestas del testigo, pero se queja de que el juez inferior trató de atemorizarlo y que por esa razón declaró que lo que botaba el acusado era una manopla. Puede observarse, sin embargo, que las manifestaciones del testigo de que vió al acusado que se quitaba algo de la mano fueron enteramente espontáneas. Tal vez por el aspecto del testigo y la manera con que se producía, circunstancias que no llegan hasta nosotros, el juez inferior pudo comprender que era necesario recordarle al testigo el juramento prestado, invitándole a decir toda la verdad, pero de estas observaciones del juez, acaso dichas con firmeza y en uso de una sana discreción, nada puede derivarse que hayan influído en el testigo a manera de amenaza o temor para que dijera una falsedad.

[4] Dos testigos más de cargo, Henry Barreda y José Arrivas Martínez, declaran: El primero llegó al sitio con Rivera, pero no dice que viera ningún arma en manos del acusado, y Martínez no presenció los hechos y su declaración se limita a que fué al sitio de la riña al siguiente día temprano y en un lado de la carretera encontró una manopla. Esta fué introducida y admitida en evidencia y la defensa tomó excepción. La objeción del apelante consistió en que la manopla no fué identificada y que su hallazgo fué demasiado remoto, al siguiente día de ocurrir los hechos. Tal prueba, sin embargo, como evidencia circunstancial era admisible y su valor probatorio podía ser considerado en relación con los demás elementos de prueba.

[5] La prueba de defensa, consistente en testigos que también llegaron al sitio de la riña, sostienen que no vieron en poder del acusado manopla alguna, ni que sacara o echara nada de sus manos. La prueba, por tanto, fué contradictoria y el juez inferior dirimió el conflicto en sentido adverso al acusado.

La defensa señala, no obstante, el peligro de un fallo basado en prueba contradictoria sin que se presente el arma,

y fundado en la declaración de su existencia de testigos más o menos resentidos. Sin embargo, la posibilidad del error cabe siempre, y aunque no está demás decir que deben los jueces proceder con mucha cautela cuando no se presenta el arma en evidencia, ellos están siempre en mejores condiciones que el tribunal de apelación para apreciar la prueba, y bajo todas las circunstancias que han concurrido en este caso, no hemos podido encontrar que exista error fundamental, o pasión, prejuicio o parcialidad en la apreciación que de toda la evidencia en conjunto hizo el juez sentenciador.

Por todo lo expuesto, *debe confirmarse la sentencia apelada.*