EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* ANTONIO ROSADO ALVARADO, acusado y apelante.

*Número:* CR-62-398      *Resuelto:* 29 de enero de 1964

*Santos P. Amadeo,* y *Jorge Luis Landing,* abogados del apelante; *J. B. Fernández Badillo, Procurador General,* y *Américo Serra, Procurador General Auxiliar,* abogados de El Pueblo.

Sala integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Hernández Matos y Santana Becerra.

EL JUEZ ASOCIADO SEÑOR SANTANA BECERRA emitió la opinión del Tribunal.

Al terminar de declarar en su testimonio directo María Medina, un testigo ocular del accidente de automóvil por el cual se procesaba al apelante de homicidio involuntario, el récord demuestra:

"DEFENSOR (Lcdo. Amadeo): Señor juez, antes de interrogar a la testigo vamos a solicitar del fiscal que si tiene alguna declaración que esta señora diese en la investigación nos la facilite.

JUEZ: Fiscal . . .

FISCAL: Señor juez, nosotros, aunque ella la hubiera prestado, consideramos que formaría parte de la investigación del fiscal, del sumario de la investigación, y no estaríamos obligados a mostrarla. Ya le dimos a la defensa la declaración del acusado, que es a la que tiene derecho.

DEFENSOR (Lcdo. Amadeo):

P Señora ¿usted declaró antes ante algún funcionario?

TESTIGO:

R Donde el juez sí.

R ¿Antes de eso usted no le declaró al fiscal Burgos Mundo?

R Sí, señor.

P ¿Un señor grueso, medio colorado?

R Sí, señor.

FISCAL: Sometemos la cuestión.

DEFENSOR: Sometida.

JUEZ: Se declara sin lugar la petición de la Defensa.

DEFENSOR: Excepción."

Al terminar de declarar en su testimonio directo María Isabel Castro Quiñones, otro testigo ocular de los hechos y esposa de uno de los dos fenecidos, el récord señala:

"DEFENSOR (Lcdo. Amadeo):

P Señora ¿Dió usted alguna declaración ante algún fiscal durante la investigación?

R Sí.

DEFENSOR: Hacemos la misma solicitud, señor juez, que hicimos en el caso de la otra testigo.

JUEZ: El fiscal . . .

FISCAL: Hacemos el mismo planteamiento del otro caso, señor juez.

JUEZ: La misma resolución.

DEFENSOR: Excepción."

Mientras declaraba Daniel Ramos Matos, testigo ocular de los hechos, el récord vuelve a demostrar a preguntas de la defensa:

"P ¿Usted declaró ante el fiscal?

R Sí, señor.

P ¿Y firmó la declaración?

R Sí, señor.

DEFENSOR: Vamos a solicitar que se nos muestre la declaración jurada prestada por este testigo al fiscal.

JUEZ: Fiscal . . .

FISCAL: Se hace la petición, señor juez, la misma petición que se hizo en el día de ayer con relación a otro testigo.

JUEZ: Sin lugar la solicitud.

DEFENSOR: Excepción."

Al comienzo de la vista el Magistrado preguntó si las partes estaban listas y la defensa manifestó que entraría a juicio solicitando que se le permitiera en el curso de la tarde hacer las gestiones para producir a un testigo que no se había presentado, pero entendía que el acusado podría conseguirlo en Río Grande y traerlo; que este testigo siempre había comparecido en los señalamientos anteriores, algo podía haberle ocurrido de carácter extraordinario, y había estado presente la última vez que se citó el caso para juicio. La Sala sentenciadora concedió a la defensa la oportunidad de hacer las gestiones para localizar a dicho testigo y manifestó:

"¿Dice el compañero que ya salió una persona hacia Río Grande a tratar de localizar a ese testigo?

DEFENSOR: Sí, señor juez.

JUEZ: Pues vamos a esperar entonces el resultado de esas gestiones para entonces resolver lo que fuera procedente si el testigo no compareciera." (Se comenzó la vista.)

En el curso de su prueba la defensa ofreció en evidencia la transcripción taquigráfica de la declaración jurada de

ese testigo, José Meléndez Rosario, debidamente certificada por el taquígrafo del tribunal. No hubo controversia en cuanto a que era una transcripción fiel y exacta de lo declarado por el testigo en corte durante un juicio anterior del caso.

Después de oir prueba sobre la imposibilidad que tenía la defensa de producir a este testigo ante el Tribunal, y de las gestiones que hizo el acusado a tal efecto,—(la prueba tendió a indicar que el testigo se había embarcado recientemente en una expedición hacia Estados Unidos y se desconocía su dirección),—la Sala sentenciadora entendió que debía acceder a la petición de la defensa y admitió la declaración anterior transcrita de ese testigo para que pasara al jurado. Luego, ante una reconsideración solicitada por el fiscal amparándose en el Art. 11 del Código de Enjuiciamiento Criminal, la Sala dejó sin efecto, como cuestión de derecho, su resolución y se negó a admitir el testimonio transcrito de dicho testigo.

■ Por la autoridad de nuestra decisión en *Pueblo* v. *Ribas*, 83 D.P.R. 386 (1961), la sentencia condenatoria debe ser revocada y ordenarse nuevo juicio, al negársele al acusado las declaraciones juradas de los testigos de cargo que declararon, a las cuales nos referimos antes. El fundamento aducido de que ello equivaldría a divulgar la secretividad del sumario fiscal no es válido después que estos testigos declararon en corte y el problema cobra tangencias con la necesidad de un juicio imparcial. Por otro lado, sería sólo una especulación de nuestra parte, desconociendo el contenido de esas declaraciones ni como las mismas podían afectar la credibilidad ante el jurado de testigos esenciales, anticipar que la negativa de la Sala a proveerlas no pudo causarle perjuicio al acusado o que no se le privara de un juicio justo.

■ Constituye también error revocable la negativa de la Sala sentenciadora a admitir la declaración transcrita del testigo José Meléndez, si como cuestión de hecho determinó

que la comparecencia de dicho testigo era imposible y que la prueba demostraba el cumplimiento por el acusado de los requisitos necesarios para justificar que se admitiera la declaración dada en el juicio anterior. Fue error de derecho el negarse a admitir esa declaración aplicando el Art. 11, inciso 4, del Código de Enjuiciamiento Criminal. Este artículo dispone que:

"En un proceso criminal el acusado tiene derecho a . . . . (4) Confrontarse con los testigos contrarios en presencia del tribunal, excepto cuando se hubieren practicado las primeras diligencias ante un promotor fiscal o juez municipal o de paz; o cuando el testimonio de algún testigo *presentado por el Pueblo,* e imposibilitado de prestar fianza para su comparecencia, hubiere sido tomado en presencia del reo, quien en persona o por medio de su abogado hubiere repreguntado, o tenido oportunidad para repreguntar al testigo, en cuyo caso, la deposición de éste podrá ser leída, siempre que se justificare a satisfacción del tribunal haber fallecido o estar demente dicho testigo o no poderse encontrar en Puerto Rico, a pesar de las diligencias practicadas al efecto."

El objeto de este artículo como demuestra su texto es proteger los derechos del acusado. Cf. *Pueblo* v. *Reyes,* 10 D.P.R. 253 (1906), pág. 255; *Pueblo* v. *Rojas,* 16 D.P.R. 251 (1910), pág. 255; *Pueblo* v. *González,* 57 D.P.R. 931 (1941), pág. 937. No es un precepto encaminado a limitar los derechos de un acusado. Se explica, garantizando como garantiza al acusado el derecho de confrontarse y carearse con los testigos en su contra, la referencia a un testigo *"presentado por el Pueblo."*

La argumentación del Fiscal, que parece hizo cambiar de criterio a la Sala sentenciadora, fue que el Art. 686 de California que en 1902 rezaba de igual manera que el Art. 11 nuestro en su inciso (4) cuando lo adoptamos, sufrió una enmienda por adición en 1911 incluyendo el testimonio *a favor del Pueblo o de la defensa* de un testigo muerto, loco, fuera de jurisdicción, etc., dado en un juicio anterior. Se dedujo que como dicho Art. 11 no fue enmendado aquí de

igual manera, el mismo impide que la Sala sentenciadora admitiera la declaración transcrita de este testigo por no ser un testigo del Pueblo.

Como cuestión de realidad, hemos encontrado en nuestra búsqueda que en *People* v. *Bird,* 64 Pac. 259, decidido en 1901 antes de la enmienda de 1911, cuando el Art. 686 y el Art. 11 nuestro disponían de igual manera, California resolvió que bajo la ley común ambas partes, el Ministerio Público y la defensa, tenían derecho a ofrecer el testimonio dado por un testigo en un juicio anterior, citando *Mattox* v. *United States,* 156 U.S. 237, y otras autoridades; que el Art. 686 tuvo el efecto de restringirle ese derecho al Fiscal, quien sólo podía ofrecer la declaración en la manera específicamente dispuesta por dicho artículo, pero que la defensa, de acuerdo con la ley común, no tenía tales restricciones del estatuto y podía ofrecer el testimonio. De modo que, contrario a la creencia del Fiscal, la enmienda de 1911 tuvo el propósito de concederle ese derecho también al Pueblo, en vista de lo resuelto, y no para declarar que el acusado lo había perdido o para restringírselo.

■ Pero independientemente del tratamiento de California, la cuestión no se rige por el Art. 11 de Enjuiciamiento Criminal y sí por el Art. 35, inciso (6), de la Ley de Evidencia. Reza el mismo:

"De conformidad con las precedentes disposiciones, podrá presentarse en un juicio evidencia de los hechos siguientes:

.    .    .    .    .    .    .    .

(6) El testimonio de un testigo que hubiere fallecido, o se hallare fuera de la jurisdicción, o estuviere imposibilitado para testificar, prestado en una causa anterior entre las mismas partes, y referente al mismo asunto."

Cf. *Irizarry* v. *Díaz Ojea,* 35 D.P.R. 144 (1926), pág. 147; *Villaronga, Com.* v. *Tribunal de Distrito,* 74 D.P.R. 331 (1953), pág. 336; *Cruz* v. *Bruno,* 76 D.P.R. 966 (1954), pág. 972.

*Habiéndose impedido que fuera al jurado prueba de defensa por un error de derecho, procede también un nuevo juicio por razón de dicho error.*