EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* ÁNGEL A. OLIVENCIA, acusado y apelante.

*Número:* CR-66-93     *Resuelto:* 20 de enero de 1967

*Luis A. Archilla Laugier,* abogado del apelante; *J. F. Rodríguez Rivera, Procurador General Interino,* abogado de El Pueblo.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

Ha sido doctrina de este Tribunal, reiterada una y otra vez, que "en procesos por portar armas, cuando ésta no se presenta, por no haber sido ocupada, la prueba del fiscal debe ser clara y convincente." *Pueblo* v. *Rosario,* 80 D.P.R. 318 (1958) y ver además *Pueblo* v. *Oquendo,* 79 D.P.R. 542, 546 (1956); *Pueblo* v. *Pacheco,* 78 D.P.R. 24, 29 (1955); *Pueblo* v. *Garcés,* 78 D.P.R. 102, 107 (1955); *Pueblo* v. *Rupizá,* 72 D.P.R. 744, 746 (1951); *Pueblo* v. *Guzmán,* 52 D.P.R. 458, 459 (1938); *Pueblo* v. *Cartagena,* 37 D.P.R. 281, 284 (1927). La prueba en este caso no lo es.

Al apelante se le acusó de infringir tres disposiciones de la Ley de Armas (25 L.P.R.A. secs. 411 *et seq.*). Los Arts. 6, 8 y 32. No tener autorización para poseer un arma; portar una cargada y dispararla. El jurado que entendió en el caso de portación lo absolvió y el juez hizo lo mismo en el de dispararla. Fue condenado de infringir las disposiciones del Art. 6.

El fiscal presentó dos testigos. El primero, un parroquiano del bar donde supuestamente ocurrieron los hechos. Declaró éste que la noche del 4 de julio de 1963 vio cuando el apelante entró con un arma igual a la que usan los policías. La describe como un revólver negro, cabo color caoba, cañón corto. Manifestó que el apelante lo entregó a la persona que estaba atendiendo el negocio. En repregunta admite que estuvo bebiendo desde las cuatro de la tarde. Los hechos ocurrieron a las diez de la noche. Que en ese intervalo ingirió no menos de quince cervezas.

El otro testigo del fiscal era la persona que atendía el negocio donde sucedieron los hechos que dieron margen a las acusaciones radicadas contra el apelante. Declaró que "esa noche estando yo atendiendo el negocio ése, como de once y cuarto a once y media, dos señores más había tomándose unas cervezas . . . . Al oir como un tiro, como un petardo, las dos personas salieron para afuera, cuando al poco rato entraron al negocio y dijeron: 'es el Cano que está borracho jugando'." El fiscal pregunta entonces "Quién fue el que dijo eso?" y contestó "Dos señores que entraron al negocio. Entraron con un revólver, un 'revolvecito' así como de juguete. Es el Cano jugando con un revólver de juguete."

Afirma que el Cano (el apelante) se quedó afuera y que los señores le dijeron que guardara el revólver. Declara que cogieron al apelante y lo montaron en la guagua y se lo llevaron. Insiste en que el Cano "no entró al negocio; el que era no entró al negocio, se quedó así en la acera . . . se paró sobre la puerta del negocio pero no entró." Afirma que el

revólver "era pequeño, era de balas blancas, creo que era". El fiscal insiste "Usted no puede decir si es de bala blanca?" y contesta "Yo he visto los de balas blancas y el revólver era como así." (¹)

El fiscal decide impugnar su testimonio y se le lee la declaración que prestó a los cinco días de ocurridos los hechos. Luego de leída, el fiscal le pregunta "Dígame, ¿es o no es cierto que usted dice ahí en su declaración jurada que se le acaba de leer, ante el señor Fiscal, que los dos individuos que usted mencionó que estaban en su negocio entraron para adentro de su negocio con el Cano, que luego usted supo que era Ángel A. Olivencia?" (el apelante). Entonces contesta "Entró hasta la puerta del negocio. Esta es la puerta, pero él se paró aquí, pero a la parte de adentro no pasó."

El fiscal se limitó a tratar de establecer que en la declaración jurada había afirmado que el acusado había entrado al negocio (el testigo sin embargo se reafirmó en lo que había declarado) pero nada hizo para desvirtuar su afirmación en el juicio al efecto de que el arma era un revólver de balas blancas, un revólver de cuatro pulgadas, de juguete, como reiteradamente afirmó el testigo.

En el presente caso, el juez absuelve al acusado en el caso de disparar el revólver, pero sin embargo lo condena en el de tenerlo, cuando no fue ocupado y la prueba de cargo evidentemente no es clara y convincente. Mientras un testigo que ha estado ingiriendo bebidas alcohólicas por cuatro o cinco horas consecutivas describe el arma en términos que se puede concluir que es un arma prohibida, el otro testigo la describe como un arma de juguete, un revólver de balas blancas. Afirma que ha visto antes esta clase de armas. La prueba fiscal no establece clara y convincentemente que el apelante portaba un arma prohibida. Cuando no se ocupa el

---

(¹)No fue hasta que se aprobó la Ley Núm. 88 de 25 de junio ·de 1965, 25 L.P.R.A. secs. 541 *et seq.* (Suplemento 1965) que se prohibió la portación de las armas de bala blanca.

arma lo que debe establecerse clara y convincentemente es el hecho de la posesión. No puede dependerse de que se describa con detalles el arma. Fácilmente puede un testigo imputar la posesión de un arma y si lo único que se le requiere es una descripción más o menos detallada, podría memorizarla y recitarla el día del juicio. Si bien no debe requerirse detalles exactos y una perfecta concordancia en los testimonios, por lo menos la prueba de cargo debe ser más convincente que la de este caso. No de otra forma puede interpretarse la norma que establecimos en *Cartagena*, supra.

*Procede revocar la sentencia apelada y absolver libremente al acusado.*

Los Jueces Asociados Señores Rigau y Ramírez Bages disienten en opiniones separadas. El Juez Presidente concurre en la opinión disidente del Juez Asociado Señor Rigau. El Juez Asociado Señor Blanco Lugo disintió.

—O—

Opinión disidente del Juez Asociado Señor Rigau con la cual concurre el Señor Juez Presidente.

San Juan, Puerto Rico, a 20 de enero de 1967

Se trata de una cuestión de credibilidad. La mayoría del Tribunal no cree la prueba de cargo que creyó el Juez Superior que presidió la vista y que oyó y vio a los testigos declarar.

Con el Juez que presidió la vista y con los otros Jueces que en este caso disienten, creo que la prueba de cargo es digna de crédito. Estimo que en la prueba hay tres indicios claros de que el apelante poseyó ilegalmente un arma prohibida.

El primero es que un testigo de la defensa declara que las dos personas que salieron del cafetín hacia afuera cuando regresaron al cafetín y le entregaron el revólver al que atendía el negocio le dijeron "guarda esa porquería de revólver de muchacho por ahí." Ese exceso de afirmación de que el

revólver era "una porquería de revólver de muchacho" para mí es indicio claro de que querían establecer a fuera de repetición un hecho distinto de lo que había ocurrido; esto es, que deseaban establecer que el revólver era de juguete y no uno de verdad.

El segundo indicio es que esas personas que querían proteger al apelante, inmediatamente luego del disparo, lo cogieron, lo montaron en un vehículo y se lo llevaron de allí. ¿Por qué hicieron eso? Para mí es claro que se lo llevaron para protegerlo de que la policía lo encontrase y lo arrestase.

En tercer lugar, si se trataba de un revólver "de juguete," como declaró el testigo de la defensa, ¿por qué tenían que quitárselo al apelante y entregárselo a guardar al que atendía el negocio?

Como ya dijo este Tribunal, por voz del entonces Juez Asociado Sr. Serrano Geyls, "Los Jueces no debemos, después de todo, ser tan inocentes como para creer declaraciones que nadie más creería." 83 D.P.R. 582.

Estos ejemplos, más el resto de la prueba de cargo, según fue creída por el Juez sentenciador, me hacen pensar que no estamos justificados en substituir su criterio por el nuestro. Por estas razones yo confirmaría.

—O—

Opinión disidente del Juez Asociado Señor Ramírez Bages

San Juan, Puerto Rico, a 20 de enero de 1967

Disiento porque, a mi juicio, la prueba en este caso fue clara y convincente aunque conflictiva. No se demostró que el tribunal de instancia incurriese en manifiesto error, prejuicio o parcialidad, en su apreciación de la misma.

En los casos de portación de armas que relacionamos a continuación confirmamos las sentencias de culpabilidad, no obstante ser la prueba conflictiva. En *Pueblo* v. *Rosario*, 80 D.P.R. 318 (1958), hubo conflicto en cuanto a la descripción del arma. Además, el testimonio de uno de los dos testigos de

cargo, quien dijo haber botado el arma, fue confusa y contradictoria. En *Pueblo* v. *Oquendo*, 79 D.P.R. 542, 546–549 (1956), los dos testigos de cargo testificaron sobre la portación del arma la cual no se presentó mientras que el testimonio del acusado y de otro testigo de la defensa tendió a demostrar que la noche de los hechos al acusado no tenía ni disparó ningún arma de fuego. Dictaminamos que no alteraríamos la apreciación que de la prueba hizo el juez sentenciador, a menos que se demostrara que incurrió en manifiesto error, prejuicio o parcialidad. En *Pueblo* v. *Pacheco*, 78 D.P.R. 24, 29 (1955), un solo testigo declaró que vio al acusado portando un arma la cual no se presentó. El acusado testificó en su defensa. Negó la portación. Dijimos que el testimonio del único testigo de la portación "bastaba si el juez sentenciador le creyó". En *Pueblo* v. *Garcés*, 78 D.P.R. 102, 107–108 (1955), se concluyó que el acusado portaba un arma de fuego porque varios testigos lo vieran con una bolsa de papel en las manos de la cual salía un cañón cilíndrico y que luego se le vio hacer varios disparos. Dictaminamos en este caso que "con esa prueba el tribunal muy bien pudo concluir, como concluyó, que el objeto que el acusado tenía dentro de la bolsa de papel era una de las armas de fuego prohibidas por la ley. La apreciación de la prueba descansa enteramente en la sana discreción del tribunal y esa apreciación no será alterada por nosotros a no ser que se nos demuestre que se incurre por el tribunal en manifiesto error, prejuicio o parcialidad".

A la luz de lo expuesto anteriormente, analicemos la prueba aportada en este caso. El testigo de cargo, Ángel Luis Pereles, testificó que como de diez y media a once de la noche del jueves 4 de julio de 1963 estaba en el bar El Coameño, en Cataño; que oyó una detonación fuera del bar; que luego entró Olivencia con un revólver en la mano el cual describió y se lo entregó al cantinero y éste salió con el arma hacia una casa ubicada detrás del negocio. Olivencia salió fuera del negocio. En contrainterrogatorio, Pereles dijo que empezó a beber

sólo cerveza a las cuatro de la tarde. Admitió que se tomó 15 copas, más o menos, entre esa hora y la hora de los hechos sobre los que declaró, es decir, en el curso de unas seis horas. El referido cantinero testificó, a insistencias del fiscal, que luego de oir la detonación, dos personas salieron fuera y al regresar con un revólver pequeño dijeron que era Olivencia "jugando con un revólver de juguete". Afirmó que el revólver "era pequeño, era de balas blancas, creo que era", pero dijo no conocer de armas. Luego añadió que "yo he visto los de balas blancas y el revólver era como así". Tanto el abogado de la defensa como el juez de instancia estimaron que al decir el testigo que "el revólver era como así" quiso decir que medía unas cuatro pulgadas. Pereles identificó el arma como un revólver negro de cabo color caoba y de cañón corto, mientras que el cantinero, quien dijo no saber de armas, lo identificó como "de balas blancas".

No hay prueba en el récord de que Pereles estuviera borracho como arguye el apelante, ni se justifica deducir que estaba incapacitado de percibir los hechos sobre los que testificó porque ingirió unas 15 copas de cerveza en el curso de seis horas. Este testigo vio a Olivencia portar un revólver de cañón corto; el cantinero, quien dijo no conocer de armas lo identificó como "de balas blancas" y conectó a Olivencia con el arma y el disparo que se oyó fuera. Los testigos de la defensa testificaron que oyeron una detonación, salieron del bar a investigar y no vieron nada, y que a Olivencia no se le vio arma alguna en su persona.

El conflicto en la prueba lo dirimió el juez de instancia. Su dictamen encuentra apoyo suficiente en la prueba. No se nos ha mostrado que incidiera al extremo de justificar que alteremos su apreciación de la misma. Concluye, como lo hicimos en *Pacheco*, supra, que el testimonio de un solo testigo bastaba si el juez sentenciador le creyó.