EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>        Recurrido<br><br>            vs.<br><br>  Joseph P. McCloskey, c/p<br>  Joseph Patrick McCloskey Díaz<br><br>        Peticionario | Certiorari<br><br>2005 TSPR 23<br><br>163 DPR ＿＿＿ |

Número del Caso: CC-2003-390

Fecha: 8 de marzo de 2005

Tribunal de Apelaciones:

              Circuito Regional I, Panel IV de San Juan

Juez Ponente:

              Hon. Gilberto Gierbolini

Abogado de la Parte Peticionaria:

              Lcdo. Nelson Biaggi García

Oficina del Procurador General:

              Lcdo. Mayra J. Serrano Borges
              Procuradora General Auxiliar

Materia: Artículo 264 Código Penal

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

      vs.                            CC-2003-390      CERTIORARI

Joseph P. McCloskey, c/p
Joseph Patrick McCloskey Díaz

    Peticionario

OPINIÓN DEL TRIBUNAL EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico, a 8 de marzo de 2005

El 6 de julio de 2001, el señor Rafael Betances Rexach, Director de RBR Construction, S.E., presentó una denuncia contra el aquí peticionario, Joseph P. McCloskey Díaz, y contra Joseph P. McCloskey Vázquez y Luis E. Pérez, imputándoles la comisión del delito tipificado en el Art. 264 del Código Penal de Puerto Rico, 33 L.P.R.A. sec. 4551.[1]

---

[1] Dicho Artículo dispone:

Toda persona que con el propósito de defraudar a otra haga, extienda, endose o entregue un cheque, giro, letra u orden para el pago de dinero, a cargo de cualquier banco u otro depositario, a sabiendas de que el emisor o girador no tiene suficiente provisión de fondos en dicho banco o depositario para el pago total del cheque, giro, letra u orden, a la presentación del mismo, ni disfruta de autorización expresa para girar en descubierto, será sancionada con multa hasta el doble del importe

Alegó Betances Rexach que el 14 de diciembre de 2000, las referidas personas libraron un cheque sin fondos a la orden de su empresa por la cantidad de $85,715.79.[2] Surge de su testimonio que cuando intentó cambiar el cheque en la sucursal de Hato Rey del Eurobank, el referido Banco se negó a pagar su importe. Betances Rexach testificó, además, que al encontrarse con McCloskey Díaz, e indicarle lo sucedido, este último le expresó que el no pago del cheque se había debido seguramente a un error y le recomendó que intentara cobrarlo nuevamente. Betances Rexach, según alegó, intentó cambiar el cheque nuevamente, volviendo a negarse el antes mencionado Banco a honrar el mismo por insuficiencia de fondos.

El 6 de junio de 2001, el representante legal de RBR Construction, S.E., le cursó una carta al peticionario McCloskey Díaz, a manera de interpelación, conforme a lo dispuesto y requerido en el Art. 266 del Código Penal de Puerto Rico, 33 L.P.R.A. sec. 4553.[3] Dicha carta provocó

---

de dicho cheque, giro, letra u orden, pero nunca mayor de cinco mil (5,000) dólares, o pena de reclusión de un día por cada cincuenta (50) dólares que deje de satisfacer hasta un máximo de noventa (90) días, o ambas penas a discreción del tribunal. El tribunal podrá imponer además la pena de restitución.

[2] No surge del expediente que los libradores hubiesen hecho, al expedirse el cheque, alguna advertencia o manifestación al señor Betances sobre la no disponibilidad de fondos, o de cualquier otra índole, respecto al cheque emitido.

[3] Dicho Artículo dispone, en lo pertinente, lo siguiente:
**(Continúa . . .)**

una secuela epistolar de parte del representante legal de McCloskey Díaz. En síntesis, y en lo pertinente, la posición asumida por el peticionario McCloskey Díaz, y su representación legal, fue a los efectos de que el alegado acto delictivo no fue cometido debido a que el cheque fue expedido en relación con una deuda preexistente y no en pago de algo obtenido en el momento de su expedición.

Habiéndose determinado causa probable, el juicio en su fondo se celebró ante la Sala Superior de San Juan del Tribunal de Primera Instancia. Terminado el desfile de la prueba de cargo, McCloskey Díaz presentó una moción de absolución perentoria, alegando que procedía que se decretara la misma por razón de que él no había firmado el cheque en controversia. El tribunal de instancia declaró

_____

Ninguna persona será sancionada de acuerdo a la sec. 4552 de este título a menos que se pruebe, a satisfacción del tribunal, que el tenedor del cheque, giro, letra u orden, o su agente, ha avisado personalmente o mediante carta certificada con acuse de recibo al girador y al endosante a su última dirección conocida para que pague al tenedor, o a su agente, en la dirección que se indicará en el aviso, el importe del cheque, giro, letra u orden dentro de un plazo no menor de diez (10) días laborables si el girador o endosante a quien se dirige el aviso residiere en la localidad del tenedor y no menor de quince (15) días laborables si residiere en otro municipio o fuera del Estado Libre Asociado de Puerto Rico. Dicho término se computará desde la fecha del aviso al girador o endosante del cheque, giro, letra u orden no pagada.

culpable a McCloskey Díaz del delito de expedición de cheques sin fondos, absolviendo a los otros coacusados.[4] Éste fue sentenciado al pago de una multa por la suma de $5,000.00, el pago de las costas del procedimiento, y al pago de la cantidad de $5,000.00 como pena de retribución.

Inconforme, McCloskey Díaz presentó un recurso de apelación el 19 de abril de 2002 ante el Tribunal de Apelaciones, el cual confirmó la sentencia del foro inferior por considerar que la prueba desfilada ante el Tribunal de Primera Instancia fue suficiente para demostrar el propósito de defraudar en las actuaciones del acusado.

Aún insatisfecho con la actuación judicial, el 22 de marzo de 2003, McCloskey Díaz acudió ante este Tribunal alegando que el Tribunal de Apelaciones había errado al:

> ...hallar culpable al apelante [McCloskey Díaz] en ausencia de prueba sobre el elemento de hacer, extender, endosar o entregar un cheque sin fondos.

---

[4] Conforme surge de la "minuta", que recoge los procedimientos acaecidos ante el tribunal de instancia, del día 17 de enero de 2002, el juez de instancia expresó:

> Analizada toda la prueba, el Tribunal considera que únicamente en cuanto a J.P. McCloskey c/p Joseph Patrick McCloskey Díaz debe recaer el fallo de culpabilidad. Es la persona a quien el perjudicado le hace la expresión de que el cheque no había sido cobrado y éste le indicó que eso era un error y que lo volviera a depositar, por lo que es una admisión de hechos.

...hallar culpable al apelante en ausencia de prueba sobre el propósito de defraudar al emitir un cheque sin fondos.

Expedimos el recurso. Estando en posición de resolver el mismo, procedemos a así hacerlo.

I

Los elementos esenciales del delito de expedición de cheques sin fondos, según lo dispuesto en el Art. 264 del Código Penal de Puerto Rico, antes citado son: (1.) hacer, extender, endosar o entregar un cheque, giro, letra u orden de pago de dinero, a cargo de cualquier banco u otro depositario, (2.) con conocimiento de que no tiene suficientes fondos para el pago ni disfruta de autorización expresa para girar en descubierto, y (3.) tener el propósito de defraudar. Pueblo v. Somarriba García, 131 D.P.R. 462, 468 (1992); Valentín Cruz v. Torres Marrero, 80 D.P.R. 463, 477 (1958).

Dejando a un lado, por el momento, los primeros dos elementos antes enumerados, vemos que, para que pueda configurarse el delito de expedición de cheques sin fondos, debe existir, como elemento subjetivo indispensable, el "propósito de defraudar" por parte del librador.

Sobre este aspecto, hemos expresado en ocasiones anteriores que en aquellos casos donde se imputa un delito de intención específica y donde no existen manifestaciones

del imputado que reflejen su estado anímico al momento de cometer los hechos, el ministerio público depende de la prueba relacionada con las circunstancias en que se comete el delito para probar el elemento de la intención criminal. Esto es, la intención criminal se evalúa en virtud de los hechos pertinentes anteriores, concomitantes y posteriores del caso. <u>Pueblo</u> v. <u>Moreno Morales I</u>, 132 D.P.R. 261, 287 (1992); <u>Pueblo</u> v. <u>Ríos Maldonado</u>, 132 D.P.R. 146, 164-65 (1992); <u>Pueblo</u> v. <u>Torres Nieves</u>, 105 D.P.R. 340, 346 (1976).

No obstante lo anterior, <u>en el caso particular del delito de expedición de cheques sin fondos</u>, nuestro legislador dispuso, <u>con carácter de ley especial</u>, que se considerará evidencia *prima facie* del propósito de defraudar un hecho "posterior" a la comisión del delito; esto es, <u>la falta de pago después de la interpelación</u>.[5]

Sobre este particular, reiteramos en <u>Pueblo</u> v. <u>Somarriba García</u>, ante, a las págs. 468 y 469, lo expresado en <u>Pueblo</u> v. <u>Cuevas Collazo</u>, 54 D.P.R. 301 (1939), en cuanto a que:

> el propósito de este requerimiento de pago [la interpelación] es proveer un procedimiento para comprobar *a posteriori*, o sea, por hechos subsiguientes, cuál era la intención o el propósito que tuvo en su mente el librador de un

---

[5] Dispone el Art. 267 del Código Penal de Puerto Rico, 33 L.P.R.A. sec. 4554, que "la falta de pago después de dicha interpelación por parte del que ha girado, firmado, endosado o entregado dicho cheque, giro, letra u orden, se considerará *prima facie* como propósito de defraudar".

cheque sin fondos en el momento de expedirlo o entregarlo a otra persona.

Evidentemente, estamos ante un delito que requiere para ser consumado, de una parte, la acción de extender, hacer, endosar o entregar el cheque del cual se sabe que no tiene provisión de fondos y, de otra parte, la omisión de no pagar el importe del cheque una vez se interpela al librador. Dora Nevares-Muñiz, Código Penal de Puerto Rico, Instituto para el Desarrollo del Derecho, 1995, pág. 416. Precisamente, al quedar probada la referida omisión por parte del librador es que se demuestra su intención defraudadora.

Esto es, en ausencia de manifestaciones del imputado que reflejen su estado anímico al momento de cometer los hechos, el Ministerio Público podrá presentar, conforme al Art. 267, ante, evidencia de la falta de pago después de la interpelación para probar la intención criminal defraudadora. Lo dispuesto por el Art. 267 es perfectamente legítimo, toda vez que se trata de la presentación, por parte del ministerio fiscal, de prueba sobre hechos relacionados y posteriores al libramiento del cheque. Véase Pueblo v. Moreno Morales I, ante; Pueblo v. Moreno Morales I, ante; Pueblo v. Ríos Maldonado, ante; Pueblo v. Torres Nieves, ante.

II

El peticionario McCloskey, amparándose en unas expresiones que hiciera este Tribunal en <u>Pueblo</u> v. <u>Cuevas</u>, ante, sostiene la <u>errónea</u> teoría de que <u>la intención de defraudar y, por ende, el delito de expedición de cheques sin fondos, no se configuran cuando se expide el cheque para el pago de una deuda preexistente</u>.

En su alegato, el peticionario cita la siguiente expresión, contenida en <u>Pueblo</u> v. <u>Cuevas</u>, ante:

> La compañía acreedora no ha sufrido perjuicio alguno como consecuencia del libramiento del cheque, pues éste fué (sic) expedido para abonar a una deuda preexistente y no en pago de efectos comprados en el momento de su expedición. <u>Pueblo</u> v. <u>Cuevas</u>, ante, a la pág. 307.

Esta expresión, <u>sacada fuera de contexto</u>, es utilizada por el peticionario como fundamento para su teoría, repetimos, de que la intención de defraudar y, por ende, el delito de expedición de cheques sin fondos, no se configuran cuando se expide el cheque para el pago de una deuda preexistente; ello, según exponen, porque bajo dichas circunstancias el librador no causa perjuicio alguno al tenedor del cheque, siendo el perjuicio un elemento fundamental en la definición de lo que constituye la acción de defraudar.

<u>La referida expresión debe interpretarse dentro del contexto de la Opinión en que fue expresada</u>. La misma se encuentra dentro del siguiente contexto:

El fraude, sinónimo de engaño, consiste en la falsa representación, mediante palabras o por actos, de hechos materiales, por la cual una persona de razonable discreción y confianza es inducida a actuar a su perjuicio, en la supresión de hechos materiales que una persona está legalmente obligada a revelar a otra.

No hubo en el presente caso intento o propósito de defraudar. El acusado al entregar el cheque al representante de su acreedor reveló a éste el hecho de que él no tenía fondos suficientes para su pago. No se consumó ni podía consumarse fraude alguno contra la compañía acreedora, porque ésta aceptó el cheque a sabiendas de que no había fondos en el banco para su pago y que el pago se haría cuando y si al librador le fuera posible depositar fondos para cubrirlo. La compañía acreedora no ha sufrido perjuicio alguno como consecuencia del libramiento del cheque, pues éste fué [sic] expedido para abonar a una deuda preexistente y no en pago de efectos comprados en el momento de su expedición. *Ibíd*. (énfasis suplido y citas omitidas).

Al analizar lo anterior junto con el texto completo de la Opinión emitida en Pueblo v. Cuevas, ante, nos podemos claramente percatar de que el *ratio decidendi* en dicha Opinión se fundamenta, precisamente, en el hecho de que en ese caso no podía existir la intención de defraudar en la mente del imputado porque él expresamente le indicó al tenedor del cheque que el mismo no tenía fondos. El perjuicio que pudo haber sufrido la compañía acreedora en dicho caso, aunque es un factor importante al momento de determinar si hubo fraude o no, no fue tomado en cuenta por este Tribunal, toda vez, que habíamos concluido previamente que no se configuró la intención de defraudar por razón de las advertencias hechas por el librador --de

que no había fondos-- al momento del libramiento del cheque. La expresión hecha en Pueblo v. Cuevas, ante, en cuanto a que la compañía acreedora no había sufrido perjuicio alguno como consecuencia del libramiento del cheque por haber sido éste expedido en pago de una deuda preexistente, debe ser considerada, por lo tanto, *dicta* del Tribunal y, en consecuencia, ignorada por inconsecuente.

Pero aún hay más. La expresión a la que se refiere el peticionario no sólo no constituye parte del razonamiento de la Opinión emitida en Pueblo v. Cuevas, ante, sino que la misma es patente e inherentemente errónea. Pensar que un acreedor no sufre perjuicio alguno cuando recibe un cheque sin fondos en pago de una deuda preexistente resulta, a todas luces, equivocado. Esto es, resulta absurdo pensar que una persona que presta un servicio o entrega un producto a otra con la expectativa de que se le pague el precio pactado, ante la posterior presentación de la factura de cobro, no sufre perjuicio alguno cuando posteriormente se le paga con un cheque sin fondos. Precisamente, el perjuicio sufrido es la ausencia de pago luego de haberse entregado la mercancía o prestado el servicio. Ciertamente, y desde un punto de vista práctico, no encontramos que exista diferencia alguna entre una situación de hechos en que el librador de un cheque paga por una mercancía o servicio inmediatamente después de

obtenido el mismo y otra donde el pago se hace posteriormente.[6]

Por otro lado, no podemos enfatizar lo suficiente el efecto nocivo que tendría la adopción de esta teoría en nuestra jurisdicción, el cual sería devastador para el flujo comercial del País. Bajo estas circunstancias, nadie estaría dispuesto a aceptar el pago posterior de una deuda mediante cheque, giro, letra u orden de pago por conocer que nuestro sistema penal no castiga la práctica de emitir

---

[6] A manera de ejemplo, consideremos las siguientes dos situaciones, ocurridas dentro del caso hipotético en que A le presta un servicio a B. Bajo el primer supuesto de hecho, inmediatamente después de prestado el servicio, B saca su chequera y extiende un cheque a favor de A en pago por el servicio prestado, entregándoselo en el momento. En el segundo supuesto, B, en lugar de pagar inmediatamente, le indica a A que le pagará mediante cheque, pasados 30 días desde que se prestó el servicio, y así lo hace. En ambos casos, el cheque no tiene fondos.

Ante estos dos supuestos, no vemos porqué, en el primer caso, A puede denunciar con éxito a B de expedición de cheques sin fondos, mientras que en el segundo caso A no tiene a su disposición semejante remedio, supuestamente porque A no sufrió perjuicio alguno, por tratarse de una deuda preexistente.

Cabe preguntarse, exactamente qué supone una deuda preexistente en estos casos bajo la tesis del peticionario. Es decir, si bajo el cuadro hipotético anterior A rindiera el servicio a B y luego B le indicara a A "pase a buscar su cheque en la tarde", o bien le dijera "pase mañana en la mañana". Esto, ¿constituiría un pago de deuda preexistente? ¿Podría A denunciar con éxito a B por la comisión del delito de expedir cheques sin fondos?

Los anteriores ejemplos --de los miles que pueden existir-- son más que suficientes para demostrar las "fallas" de las que adolece la referida posición, las cuales, repetimos, son evidentes.

estos instrumentos sin provisión de fondos cuando se hace en pago de deudas preexistentes.

Por los efectos adversos que tendría una posición como la que hoy propone el peticionario y por la misma ser inherentemente errónea e ilógica, no podemos avalar la misma.

III

No obstante la incorrección de la posición asumida por el peticionario McCloskey en el presente caso, estamos contestes en que procede la revocación de la sentencia apelada; ello por razón de que no quedó demostrado que el peticionario haya hecho, extendido, endosado o entregado el cheque sin fondos librado a favor de RBR Construction, S.E.

Al comparar el cheque emitido en el presente caso con la tarjeta de firmas autorizadas para suscribir el mismo, que también fue presentado en evidencia, nos damos cuenta de que la firma de McCloskey Díaz no figura en el cheque. Las firmas contenidas en el mismo coinciden con las firmas de los señores Luis E. Pérez Pagán y Joseph P. McCloskey Vázquez que aparecen en la tarjeta de firmas.[7]

---

[7] En cuanto a este asunto, de la "Estipulación de Prueba Oral" sometida por las partes el 31 de mayo de 2002 al Tribunal de Apelaciones sólo surge que el señor Rafael Betances testificó que el cheque le fue entregado el 14 de diciembre de 2000 y que no sabía quién lo había firmado, pues un empleado suyo fue quien se lo entregó. Tampoco surge que se haya presentado prueba sobre quién le entregó el cheque a su empleado.

No obstante esta ausencia de prueba, el Tribunal de Primera Instancia le impuso responsabilidad criminal a McCloskey Díaz --y, curiosamente, absolvió a Pérez Pagán y a McCloskey Vázquez, acusados por el mismo delito-- sólo porque el primero fue el único interpelado y porque luego de la interpelación le dijo al perjudicado que depositara nuevamente el cheque. Lo anterior, definitivamente, no es suficiente para probar o demostrar uno de los elementos del delito de expedición de cheques sin fondos y sin el cual no se configura el tipo delictivo, a saber: el hacer, extender, endosar o entregar el cheque (Art. 264, ante).

El Tribunal de Primera Instancia erró al concluir que la mera indicación por parte de  McCloskey al perjudicado de que presentara, nuevamente, el cheque ante el Banco constituyó un libramiento, endoso o entrega a los efectos de la disposición penal contenida en el Art. 264, ante. Si bien se podría argumentar que McCloskey Díaz --al indicarle a Betances Rexach que depositara nuevamente el cheque-- tuvo alguna intención de defraudarlo, no quedó demostrado que él hubiera hecho, extendido, endosado o entregado el cheque en cuestión; razón por la cual, no hay duda, procede decretar la revocación de la sentencia que hoy revisamos.

Pero, hay más. Como surge del expediente del caso hoy ante nuestra consideración, uno de los testigos del ministerio fiscal --ejecutivo del Banco Eurobank-- declaró que dicha institución financiera permitió que los

libradores del cheque en cuestión se sobregiraran en su cuenta de cheques --esto es, el Banco pagaba u honraba los sobregiros-- en un sinnúmero de ocasiones, práctica que se había convertido en usual. Testificó, además, el referido testigo que en virtud de ello los giradores del cheque podían haber tenido la expectativa de que el cheque expedido fuera honrado por Eurobank. Siendo ello así, en el presente caso está claramente ausente la intención de defraudar ya que los libradores podían haber pensado que dicho cheque sería honrado por Eurobank.

IV

Procede, en consecuencia, exonerar al peticionario McCloskey Díaz por los antes mencionados fundamentos. Actuar de otra manera atentaría contra el principio de legalidad consagrado en el Artículo 8 de nuestro Código Penal, 33 L.P.R.A. sec. 3031, por no haberse probado, en este caso, todos los elementos del delito, claramente dispuestos en el estatuto penal.

Se dictará Sentencia de conformidad.

FRANCISCO REBOLLO LÓPEZ
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

        vs.                      CC-2003-390       CERTIORARI

Joseph P. McCloskey, c/p
Joseph Patrick McCloskey Díaz

    Peticionario


SENTENCIA

San Juan, Puerto Rico, a 8 de marzo de 2005

      Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente se dicta Sentencia revocatoria de la emitida en el presente caso por el Tribunal de Apelaciones y, en consecuencia, se exonera al peticionario Joseph P. McCloskey.

      Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Corrada del Río emitió Opinión concurrente a la cual se unió el Juez Asociado señor Rivera Pérez. Los Jueces Asociados señor Fuster Berlingeri y señora Rodríguez Rodríguez no intervinieron.


                    Aida Ileana Oquendo Graulau
               Secretaria del Tribunal Supremo

El Pueblo de Puerto Rico

    Recurrido

        v.                          CC-2003-390  Certiorari

Joseph P. McCloskey, c/p
Joseph Patrick McCloskey

    Peticionario

Opinión Concurrente del Juez Asociado SEÑOR CORRADA DEL RÍO a la cual se une el Juez Asociado SEÑOR RIVERA PÉREZ

San Juan, Puerto Rico, 8 de marzo de 2005.

Nos corresponde resolver si una persona comete el delito de expedición de cheques sin provisión de fondos, tipificado en el Artículo 264 del Código Penal de Puerto Rico, 33 L.P.R.A. sec. 4551, cuando expide el cheque para el pago de una deuda preexistente.

I

El 6 de julio de 2001, el señor Julio Rafael Betances Rexach, Director de RBR Construction, S.E., presentó una denuncia en contra de Joseph Patrick McCloskey Díaz (en adelante, "señor McCloskey" o "peticionario"), Joseph Peter McCloskey Vázquez y Luis E. Pérez Pagán imputándoles la comisión del delito de

insuficiencia de fondos contemplado en el Artículo 264 del Código Penal de Puerto Rico, 33 L.P.R.A. sec. 4551. En esencia, les imputó haber expedido el cheque, timbrado Sunrise Partners II, S.E., de la cuenta número 0114008924 del Eurobank, a favor de RBR Construction, S.E., por la cantidad de $85,715.19, con conocimiento de que el referido instrumento negociable no tenía fondos suficientes ni gozaba de autorización expresa para girar al descubierto.

Habiendo determinado causa probable para acusar, el Tribunal de Primera Instancia, Sala Superior de San Juan (en adelante, "TPI"), señaló la celebración de la vista en su fondo para el 9 de agosto de 2001. Llegada la vista, el Ministerio Fiscal presentó como prueba el testimonio del señor Betances Rexach, quien declaró que los acusados le debían $85,715.89, procedente de un trabajo de construcción realizado y de alquiler de equipo pesado. A tales efectos, presentó una factura por la renta de equipo pesado y aclaró que todavía se le adeuda. Asimismo, presentó en evidencia el cheque librado de fecha de 14 de diciembre de 2000. El señor Betances Rexach declaró que le fue entregado ese cheque como pago de la referida factura y que al ir a la Sucursal de Eurobank, en Hato Rey, el Banco se negó a cambiarlo. Señaló que en el banco se encontró con el peticionario y le informó de lo sucedido. El peticionario le indicó que seguramente se trataba de un error y le recomendó que intentara depositarlo nuevamente.

Conforme a ello, el señor Betances Rexach expresó que en dos ocasiones posteriores intentó cambiar el

cheque, pero el banco no lo honró.  El TPI admitió en evidencia un documento que consta de dos hojas de depósito, una de 19 de diciembre de 2000 y la otra de 3 de enero de 2001, ambas del Banco Santander.  Atestó que el cheque tenía que haber sido firmado por los acusados y que una de esas firmas debía ser la del peticionario.  El TPI admitió en evidencia una carta dirigida al peticionario, la cual se identificó como una carta de requerimiento de pago.

El otro testigo de cargo fue Raúl Blanco Tercel, Gerente del Departamento de Cobro de Eurobank, quien declaró que obtuvo la tarjeta de firma de la cuenta de los acusados y que de dicho documento surge que las tres personas autorizadas a firmar eran éstos.[8]  Testificó, además, que el 15 de diciembre de 2000, fecha aproximada en que el cheque fue girado, la cuenta tenía un sobregiro de "once mil y pico de dólares."  Asimismo, el señor Blanco Tercel señaló que para el 20 de diciembre de 2000, fecha en que fue depositado el cheque por primera vez, la cuenta tenía un sobregiro de "ciento dieciocho mil y pico de dólares" y para el 4 de enero de 2001, fecha en que fue depositado por segunda vez, la cuenta tenía un sobregiro de "ciento veintiséis mil y pico de dólares."

Durante el contrainterrogatorio, el Gerente declaró que a los acusados se les había permitido sobregirarse en una variedad de ocasiones, por lo que ellos podían tener la expectativa de que el cheque fuera honrado.  Aclaró

---

[8] **Una fotocopia de la tarjeta de las firmas fue admitida en evidencia por el TPI.  Apéndice del recurso, a la pág. 200.**

que él no es quien autoriza que se conceda un sobregiro y que desconoce las razones por las cuales el cheque no fue honrado.

Por su parte, la evidencia de la defensa consistió en varias comunicaciones escritas que le cursara su abogado al Lcdo. Gerardo A. Quirós López, representante legal de RBR Construction, en respuesta a la carta de requerimiento de pago.

Luego de concluida la vista en su fondo, el 15 de noviembre de 2001, el peticionario presentó una moción de absolución perentoria bajo las disposiciones de la Regla 135 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R.135, fundamentada en que el Ministerio Público no había establecido la intención de defraudar.

Sin embargo, el 17 de enero de 2002, el TPI declaró culpable únicamente al aquí peticionario y lo sentenció al pago de una multa de $5,000.00, de una pena especial pecuniaria de $100.00, más las costas del proceso.

En desacuerdo, el 18 de enero de 2002, el peticionario presentó nuevamente una moción de absolución perentoria cuestionando el fallo dictado en su contra. Por su parte, el Ministerio Público presentó una moción solicitando que en adición a la multa se le impusiera al peticionario la pena de restitución.

Así las cosas, el 20 de marzo de 2002, el TPI notificó la sentencia emitida el 17 de enero de 2002 y en la misma denegó la solicitud de absolución perentoria presentada por el peticionario y le impuso una pena de restitución de $5,000.00.

Inconforme, el 19 de abril de 2002, el peticionario presentó un recurso de apelación ante el anterior Tribunal de Circuito de Apelaciones (en adelante, "TA"), el cuál confirmó la sentencia del foro primario. Al así hacerlo, el TA expresó que la prueba desfilada ante el foro primario fue suficiente para demostrar el propósito de defraudar. Asimismo, el foro *a quo* concluyó que el peticionario hizo caso omiso al ser confrontado con la situación del cheque y al requerírsele el pago mediante carta. Ello, según el TA, constituyó evidencia *prima facie* del propósito de defraudar.

Inconforme aún, el 22 de mayo de 2003, el peticionario acudió ante este Tribunal, mediante escrito de *certiorari*, formulando los siguientes señalamientos de error:

> 1. Erró el Tribunal de Instancia al hallar culpable al apelante en ausencia de prueba sobre el elemento de hacer, extender, endosar o entregar un cheque sin fondos.

> 2. Erró el Tribunal de Instancia al hallar culpable al apelante en ausencia de

> prueba sobre el propósito de defraudar al emitir un cheque sin fondos.

Mediante Resolución de 22 de agosto de 2003, expedimos el presente recurso. Contando con el beneficio de la comparecencia de ambas partes, estamos en posición de resolver.

II

Por la naturaleza de los señalamientos de error, comenzamos con la discusión del segundo, esto es, si con la expedición del cheque sin fondos como pago de una deuda preexistente, quedó probada la "intención de defraudar" que requiere el Artículo 264 del Código Penal, *supra*.[9]

¿Constituye el libramiento de un cheque sin fondos, como pago de una deuda preexistente, un delito al amparo del Artículo 264 del Código Penal? ¿Se configura la "intención de defraudar" aun cuando el librador del referido instrumento no ha recibido algún bien o servicio a cambio? Veamos.

El Artículo 264 del Código Penal, *supra*, dispone que:

> Toda persona que con el propósito de defraudar a otra haga, extienda, endose o entregue un cheque, giro, letra u orden para el pago de dinero, a cargo de cualquier banco u otro depositario, a sabiendas de que el emisor o girador no tiene suficiente provisión de fondos en dicho banco o depositario para el pago total del cheque, giro, letra u orden a la presentación del mismo, ni disfruta de autorización expresa para girar en descubierto, será sancionada con multa hasta el doble del importe de dicho cheque, giro, letra u orden, pero nunca mayor de cinco mil (5,000.00) dólares, o pena de reclusión de un día por cada cincuenta (50) dólares que deje de satisfacer hasta un máximo de noventa (90) días, o ambas penas a discreción del Tribunal. El Tribunal podrá imponer además la pena de restitución.

---

[9] **De determinarse que la expedición de un cheque sin fondos como pago de una deuda preexistente no infringe la disposiciones del Código Penal, será innecesario entrar a dilucidar el asunto probatorio contenido en el primer señalamiento de error, esto es, si una de las firmas contenidas en el cheque es la del acusado.**

Este Artículo trata de atender la realidad social de nuestro país, en donde existe una cantidad dramática de esquemas para defraudar a otras personas, en los cuales están envueltas cantidades exorbitantes de dinero. El propósito de las personas que incurren en la conducta tipificada en este Artículo estriba en defraudar para lucrarse a gran escala. *Véase* Exposición de Motivos, Ley Núm. 149 de 11 de agosto de 2000, a la pág. 988. Por tanto, se hizo necesario que el legislador puertorriqueño atemperara esta realidad social a las disposiciones del Código Penal e incluyera entre las mismas una serie de medidas dirigidas a proscribir este tipo de conducta.

Los elementos esenciales del delito de expedición de cheques sin fondos, según identificados por este Tribunal son:

> (1) hacer, extender, endosar o entregar un cheque, giro, letra u orden de pago de dinero, a cargo de cualquier banco u otro depositario con conocimiento de que no tiene suficientes fondos para el pago, y

> (2) tener el propósito de defraudar; siendo este último la médula del delito. *Pueblo v. Somarriba García*, 131 D.P.R. 462, 468 (1992); *Valentín v. Torres*, 80 D.P.R. 463, 477 (1958).

Es decir, si el Estado no demuestra más allá de duda razonable que el acusado **intentó defraudar** al perjudicado, éste no podrá resultar convicto a pesar de que conocía que no contaba con fondos suficientes en su cuenta. Ambos elementos deberán ser alegados en

la acusación y establecidos por la prueba. *Pueblo v. Cuevas*, 54 D.P.R. 301 (1939).

El Artículo 7(15) del Código Penal, 33 L.P.R.A. sec. 3022 define el proceder "fraudulentamente" como aquel acto cometido mediante "ardid, simulación, trama, treta o mediante cualquier forma de engaño." Mientras que, "defraudar", significa privar a alguien, con abuso de su confianza o con infidelidad a las obligaciones propias, de lo que le toca de derecho. Diccionario de la Lengua Española, 22 ed., Madrid, Ed. Espasa-Calpe, 2001, Vol. I., pág. 738.

Cónsono con lo anterior, en *Pueblo v. Flores Betancourt*, 124 D.P.R. 867, 876-877 (1989), este Tribunal expresó que **"[d]efraudar quiere decir privar a una persona de un bien, derecho o interés "con abuso de su confianza o con infidelidad a las obligaciones propias."** [10] Sobre el particular, este foro puntualizó en que:

> Aunque la intención de defraudar implica un "propósito de obtener una ventaja material sobre [otra persona], o de inducirla a desprenderse de algún valor, derecho, privilegio u obligación", Conferencia Judicial de Puerto Rico,

---

[10] **En esa ocasión, este Tribunal interpretó el Artículo 271 del Código Penal, *supra*, sobre el delito de**

**continúa**
...

3 **continuación**

**falsificación de documentos. A pesar de que dicho precepto legal, en sus aspectos básicos, provino del Código Penal argentino, este Tribunal concluyó que la frase "con intención de defraudar a otra persona" tenía su raíz en el Código Penal de 1902, cuya fuente lo es el *common law* angloamericano, en específico el Código Penal de California de 1873.**

*Instrucciones al Jurado para el Tribunal Superior de Puerto Rico*, 2da. ed., San Juan, Ed. C. Abo. P.R., 1977, pág. 282, el perjuicio no tiene que ser necesariamente patrimonial. Es suficiente que la intención sea frustrar la administración de una ley o lesionar (*impair*) una función gubernamental"... **La intención de defraudar se da en toda modalidad de falsedad que pueda ocasionar daño relevante a algún interés ajeno....** (Énfasis nuestro).[11]

De lo anterior puede concluirse que, en los casos en que se emite un cheque sin fondos, para que se configure la intención de defraudar, es necesario que se prive simultáneamente al recipiente del cheque de algún bien, valor o cualquier otro derecho patrimonial que le corresponda. Dicho en otras palabras, para que pueda configurarse el delito es necesario que el cheque haya sido expedido fraudulentamente con la única intención de obtener algo a cambio del mismo. Por tanto, deberá darse algún tipo desplazamiento patrimonial entre ambas partes, esto es, el que expide, endosa o entrega el cheque deberá enriquecerse con algún bien, valor o servicio y él que lo

---

[11] En *People v. Griffith*, 262 P.2d 355 (1953), el Tribunal Supremo de California, expresó que:

An intent to defraud the person to whom the check was delivered is an essential element of the offense charged. (citas omitidas) **It is the gist of the offense…** No presumption of law will suffice for proof of the intent to defraud…

**Intent to defraud is an intent to commit fraud.** As defined by lexicographers, **the word "defraud" means to deprive the right, either by procuring something by deception or artifice, or by appropriating something wrongfully…**.

recibe, al mismo tiempo, deberá experimentar un correlativo empobrecimiento.  Como consecuencia de lo anterior, concluimos que si un sujeto expide un cheque, sin intención de beneficiarse u obtener en intercambio algún bien de valor, no se configura la intención de defraudar que exige el Artículo 264, *supra*.

En *Pueblo v. Cuevas*, 54 D.P.R. 301 (1939), este Tribunal expresó que "[e]l propósito del estatuto... es perseguir y castigar la expedición de cheques sin fondos como medio **para defraudar o engañar a la persona que lo recibe obteniendo de ella dinero o propiedades**." A tales fines expresamos que:

> El propósito de defraudar forma parte y es un elemento esencial del delito que define y castiga la sección 1ª de la Ley núm. 26, *supra*.  Y siendo elemento esencial del delito, debe ser alegado en la acusación y establecido por la prueba."....
>
> La jurisprudencia que hemos examinado sostiene que cuando en la definición
>
> del delito de dar un cheque sin fondos se incluye el requisito del "propósito de defraudar" la médula (gist) de la ofensa es el conocimiento del librador del cheque en el momento de expedirlo de la insuficiencia de fondos **y el propósito de defraudar**.

De otra parte, el Artículo 264, *supra*, hay que entenderlo e interpretarlo a la luz de las disposiciones complementarias establecidas en los Artículos 265 al 268 del Código Penal, 33 L.P.R.A. secs. 4552-4555.  De este modo, para poder procesar a una persona por el delito de expedición de cheques sin fondos tipificado en dicho Artículo, y como condición precedente y jurisdiccional, el Estado deberá

demostrar que el perjudicado avisó personalmente o mediante carta certificada al girador o endosante de que el cheque no pudo ser honrado por insuficiencia de fondos. *Pueblo v. Valentín*, 131 D.P.R. 462, 469 (1992).[12] A dicho requerimiento se le conoce como la interpelación, y a través de éste se podrá comprobar *a posteriori*, cuál era la intención o estado mental del librador del cheque sin fondos al momento de expedirlo y entregarlo a otra persona. *Pueblo v. Somarriba*, supra, a las págs. 468-469; *Pueblo v. Cuevas*, 54 D.P.R. 301, 305 (1939).

Si se demuestra que el librador no efectuó el pago dentro del período de diez (10) o quince (15) días, según corresponda, ello constituirá evidencia *prima facie* de que al momento de expedirse el cheque

---

[12] **El texto literal del Artículo 266 lee de la siguiente manera:**

> **Ninguna persona será sancionada de acuerdo a la sec. 4552 de este título a menos que pruebe, a satisfacción del tribunal, que el tenedor del cheque, giro, letra u orden, o su agente, ha avisado personalmente o mediante carta certificada con acuse de recibo al girador y al endosante a su última dirección conocida para que pague al tenedor, o a su agente, en la dirección que se indicará en el aviso, el importe del cheque, giro, letra u orden dentro de un plazo no menor de diez (10) días laborables si el girador o endosante a quien se dirige el aviso residiere en la localidad del tenedor y no menor de quince (15) días laborables si residiere en otro municipio o fuera del Estado Libre Asociado de**
>
> > **continúa...**
>
> **... ₅ continuación**
>
> **Puerto Rico. Dicho término se computará desde la fecha del aviso al girador o endosante del cheque, giro, letra u orden no pagada....**

el mismo se hizo con el **propósito de defraudar**. Artículo 267, *supra,* nota 4*; Pueblo v. Somarriba, supra,* a la pág. 469. Es decir, la falta de pago después del aviso constituye evidencia de la intención de defraudar.[13] Una vez el Estado establece dicha presunción de defraudar, corresponde al acusado controvertirla.

En síntesis, para que una persona pueda ser procesada, bajo las disposiciones anteriormente citadas, ésta deberá expedir o endosar un cheque con conocimiento de que no tiene fondos, y mediante engaño apropiarse de bienes o propiedades de algún valor o recibir servicios a cambio del mismo. Si la situación del perjudicado en nada cambia con la expedición del cheque, es decir, si ello no es lo que motiva al perjudicado a intercambiar simultáneamente el bien o servicio, la persona que expida el cheque no incurrirá en este delito.

En otras jurisdicciones estatales que poseen estatutos similares al nuestro han llegado al mismo resultado. Dichos foros han establecido que el otorgar un cheque sin fondos en pago de una deuda preexistente no viola aquellos estatutos que ni siquiera hacen referencia a la obtención de algún bien de valor (como el nuestro), concluyendo, por lo tanto, que la "intención de defraudar" no se configura si el

---

[13] **Por el contrario, el pago oportuno del cheque relevará de responsabilidad criminal a la persona que lo hubiese emitido o endosado. Artículo 268 Código Penal, 33 L.P.R.A. sec. 4555.**

perjudicado no ha sido despojado de algún bien. *Véase i.e., State v. Durbin*, 614 NE2d 799 (Ohio, 1992)*; Maggard v. Commonwealth,* 262 SW2d 672 (Kentucky, 1953); *Thompson v. State*, 69 SE2d 206 (Georgia, 1952); *Douglas v. State,* 57 SE2d 438 (Georgia, 1950)*; Moore v. People*, 235 P2d 798 (Colo.1951); State v. Vandenburg, 2 A2d 916 (Delaware, 1938); *Commonwealth v. Hammock*, 250 SW 85 (Kentucky, 1923); *Berry v. State*, 111 SE 669 (Georgia, 1922). *Cf. People v. Williams*, 230 P 667; *People v. Khan*, 182 P 803 (California, 1919).

Teniendo este trasfondo jurídico como marco de referencia, procede que resolvamos la controversia ante nuestra consideración.

III

Al examinar la situación que se nos presenta en el caso de autos, vemos que **no** fue la expedición del cheque sin fondos lo que motivó que la compañía RBR Construction S.E. prestara los servicios de arrendamiento por construcción. Es decir, el cheque no indujo a dicha compañía a prestar servicio o equipo alguno. Los servicios fueron prestados dos meses antes de que el cheque fuese expedido. La posición de la referida compañía al recibir dicho pago quedó en la misma situación: antes de la expedición del cheque Sunrise Partners, S.E. ya le debía $85,715.79, después de la expedición aún le quedan debiendo la misma cantidad.

Tratándose de un cheque en pago de una deuda preexistente, y no habiendo el Estado demostrado más allá de duda razonable que fue la intención del señor McCloskey defraudar a la referida compañía, no medió aquí la intención criminal de defraudar contemplada en el Artículo 264 del Código Penal, *supra*,. Al ser este un elemento esencial del delito, existe una ausencia total de prueba en cuanto al mismo, por lo que procede que se desestime la acusación en contra del peticionario.

De otra parte, debemos llamar la atención a que de la declaración del propio testigo del Ministerio Público, el señor Blanco Tercel, se desprende que el banco contra el cual se giró el cheque acostumbraba a cubrir los sobregiros de la cuenta en cuestión, y por ello se podría

inferir que el señor McCloskey tenía una expectativa razonable de pago.[14] Ello abona a nuestra conclusión de que el cheque no fue expedido con la intención de defraudar al señor Betances Rexach.

Generalmente, la expectativa razonable de pago constituye una defensa que puede levantar un acusado en este tipo de casos y con ella puede controvertir exitosamente la presunción de defraudar. *State v. Stemen*, 106 N.E. 2d 662 (Ohio, 1951).

IV

Por los fundamentos expuestos, concurrimos con el dictamen del Tribunal al decretar la exoneración del acusado.

BALTASAR CORRADA DEL RÍO

Juez Asociado

---

[14] **Según surge de la Estipulación de Prueba Oral, el señor Blanco Tercel declaró que "a Sunrise Partners II, S.E., se le permitió sobregirarse en una variedad de ocasiones y que el historial según dicho Exhibit demuestra que esto era usual.** Que en virtud de ello los giradores del cheque pueden tener la expectativa que fuera honrado. **Que desconoce porque no lo fue.**