EL PUEBLO DE PUERTO RICO, recurrido, *v.* RAÚL GASCOT CUADRADO c/p JOSÉ R. GASCOT CUADRADO, peticionario.

*Número:* CC-2002-854          *Resuelto:* 16 de noviembre de 2005

*Osvaldo Aponte Del Valle*, abogado de la parte peticionaria; *Roberto J. Sánchez Ramos*, procurador general, abogado de la parte recurrida.

## SENTENCIA

En este caso *no existe controversia* sobre el hecho de que el acusado peticionario Raúl Gascot Cuadrado —en relación con la futura construcción de una vagoneta de acero a la medida por parte de la querellante Spartan Manufacturing, Inc.— le entregó a ésta dos *"cheques" postdatados* de $5,000 y $15,000, respectivamente. *Tampoco existe controversia* sobre el hecho de que, llegado el día de la fecha que figuraba en los "cheques", *no* fueron pagados por la institución bancaria por falta de fondos suficientes.

Presentada la correspondiente denuncia, Gascot Cuadrado solicitó, al amparo de la Regla 64 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, *que se desestimara la denuncia* por alegadas infracciones al Art. 264 del Código Penal de Puerto Rico (expedición de cheques sin fondos), 33 L.P.R.A. sec. 4551;[1] ello principalmente debido a que, según éste, nunca se configuró el delito de expedición de cheques sin fondos por, alegadamente, no haberse satisfecho el requisito de la interpelación, según lo dispone la ley.[2]

Gascot Cuadrado alegó, *además*, que la denuncia no imputaba la intención de defraudar, elemento esencial del delito de expedición de cheques sin fondos; que el tenedor del cheque no sufrió daños por los actos del imputado, y que, a fin de cuentas, los cargos debían hacerse contra la corporación titular de la cuenta contra la que se pretendieron girar los cheques y no contra el imputado en su carácter personal.

El Tribunal de Primera Instancia declaró "sin lugar" la solicitud de desestimación de Gascot Cuadrado. Posteriormente, y ante solicitudes de *certiorari* y de reconsideración presentadas por el imputado, el Tribunal de Apelaciones, mediante dos resoluciones de 26 de septiembre y 16 de octubre de 2002, *se negó a revisar el dictamen del Tribunal de Primera Instancia.*

Inconforme, Gascot Cuadrado acudió ante este Tribunal

---

[1] Dicho artículo dispone: "Toda persona que con el propósito de defraudar a otra haga, extienda, endose o entregue un cheque, giro, letra u orden para el pago de dinero, a cargo de cualquier banco u otro depositario, a sabiendas de que el emisor o girador no tiene suficiente provisión de fondos en dicho banco o depositario para el pago total del cheque, giro, letra u orden, a la presentación del mismo, ni disfruta de autorización expresa para girar en descubierto, será sancionada con multa hasta el doble del importe de dicho cheque, giro, letra u orden, pero nunca mayor de cinco mil (5,000) dólares, o pena de reclusión de un día por cada cincuenta (50) dólares que deje de satisfacer hasta un máximo de noventa (90) días, o ambas penas a discreción del tribunal. El tribunal podrá imponer además la pena de restitución." 33 L.P.R.A. sec. 4551.

[2] Dicho planteamiento está basado en que él nunca recibió la carta certificada con acuse de recibo que, a esos efectos, le enviara el gerente de Spartan Manufacturing, Inc. a la dirección que Gascot Cuadrado le había suministrado; *ello por razón de que Gascot Cuadrado nunca la reclamó en el correo, a pesar de los avisos que se le entregaron para que así lo hiciera.*

alegando que tanto el Tribunal de Primera Instancia como el Tribunal de Apelaciones incidieron al

> ... no desestimar las denuncias por falta de jurisdicción al no haberse hecho debidamente la interpelación.
>
> ... [determinar que en la emisión de dos cheques postdatados] podía existir la intención de defraudar
>
> ... no desestimar las denuncias como cuestión de derecho, cuando no hay controversia de que el recurrente no obtuvo nada a cambio al emitir los cheques. Petición de *certiorari*, pág. 5.

## I

La Regla 64 de Procedimiento Criminal, ante, dispone, en lo aquí pertinente, que "la moción para desestimar la acusación o la denuncia, o cualquier cargo de las mismas sólo podrá basarse en uno o más de los siguientes fundamentos: ... que la acusación o denuncia no imputa un delito". *Este fundamento de desestimación implica que, admitido como cierto lo alegado en la denuncia o acusación, no se configura o satisface delito penal alguno bajo los estatutos vigentes en Puerto Rico.* Véase *Pueblo v. Irizarry*, 156 D.P.R. 780 (2002).

Al evaluar la moción de desestimación por este fundamento, el tribunal ha de tomar en cuenta el *principio de legalidad* establecido en el Art. 8 del Código Penal de Puerto Rico, 33 L.P.R.A. sec. 3031, que dispone, en lo aquí pertinente, que "[n]o se instará acción penal contra persona alguna por un hecho que no esté expresamente definido por la ley como delito ...". El tribunal debe considerar, además, el *principio de interpretación restrictiva de la ley penal*, en el sentido de que al considerar los hechos imputados en la acusación, junto con la ley penal que define el delito imputado, las dudas que permanecen sobre si se satisface o no el tipo penal, después de considerar las normas de interpretación de estatutos, deben ser resueltas a favor del acusado.

No obstante, se debe tener presente que aunque este principio de interpretación restrictiva de la ley penal favorece al acusado en cuanto al alcance de ese tipo de estatuto, que define un delito, *éste no exige que a las palabras de un estatuto de esa naturaleza debe impartírsele un significado más limitado o que deba hacerse caso omiso de la evidente intención del legislador.* Pueblo v. Ruiz, 159 D.P.R. 194 (2003); *Pueblo v. Irizarry*, ante.

La moción de desestimación fundamentada en que el pliego acusatorio o la denuncia no imputa delito es privilegiada, en el sentido de que puede presentarse en cualquier momento, en conformidad con lo dispuesto en la Regla 63 de Procedimiento Criminal, 34 L.P.R.A. Ap. II. No obstante, si se trata de un defecto *subsanable*, puede ser corregido mediante una enmienda. Si la acusación o la denuncia adoleciera de algún defecto u omisión sustancial, el tribunal en el cual se ventila el proceso podrá permitir, en cualquier momento antes de la convicción o absolución del acusado, las enmiendas necesarias para subsanarlo. Si se trata de una acusación, el acusado tendrá derecho a que se le celebre nuevamente el acto de lectura de la acusación. Si se trata de una denuncia, el acusado tendrá derecho a que el juicio se celebre después de los cinco días siguientes a aquel en que se haga la enmienda. Regla 66 de Procedimiento Criminal, 34 L.P.R.A. Ap. II; *Pueblo v. Irizarry*, ante.

## II

Los *elementos esenciales* del delito de expedición de cheques sin fondos, según lo dispuesto en el Art. 264 del Código Penal de Puerto Rico antes citado son: (1) hacer, extender, endosar o entregar un cheque, giro, letra u orden de pago de dinero, a cargo de cualquier banco u otro depositario, (2) con conocimiento de que no tiene suficientes fondos para el pago ni disfruta de autorización expresa

para girar en descubierto, y (3) tener el propósito de defraudar. *Pueblo v. Somarriba García*, 131 D.P.R. 462, 468 (1992); *Valentín v. Torres*, 80 D.P.R. 463, 477 (1958).

Dejando a un lado, *por el momento*, los primeros dos elementos antes enumerados, vemos que, para que pueda configurarse el delito de expedición de cheques sin fondos, *debe existir, como elemento subjetivo indispensable, el "propósito de defraudar" por parte del librador.*

Sobre este aspecto hemos expresado que en aquellos casos donde se imputa un delito de intención específica y donde no existen manifestaciones del imputado que reflejen su estado anímico al momento de cometer los hechos, el Ministerio Público depende de la prueba relacionada con las circunstancias en que se comete el delito para probar el elemento de la intención criminal. Esto es, la intención criminal se evalúa en virtud de los hechos pertinentes anteriores, concomitantes y posteriores del caso. *Pueblo v. Moreno Morales I*, 132 D.P.R. 261, 287 (1992); *Pueblo v. Ríos Maldonado*, 132 D.P.R. 146, 164–165 (1992); *Pueblo v. Torres Nieves*, 105 D.P.R. 340, 346 (1976).

En el caso particular del delito de expedición de cheques sin fondos, nuestro legislador dispuso, *con carácter de ley especial*, que se considerará evidencia *prima facie* del propósito de defraudar un hecho "posterior" a la comisión del delito; esto es, *la falta de pago después de la interpelación,*[3] la cual no es un elemento del referido delito, sino una defensa del acusado.

Sobre este particular, reiteramos en *Pueblo v. Somarriba García*, ante, págs. 468–469, lo expresado en *Pueblo v. Cuevas*, 54 D.P.R. 301 (1939), en cuanto a que

> ... el propósito de este requerimiento de pago [la interpelación] es proveer un procedimiento para comprobar *a*

---

[3] Dispone el Art. 267 del Código Penal de Puerto Rico, 33 L.P.R.A. sec. 4554, que "la falta de pago después de dicha interpelación por parte del que ha girado, firmado, endosado o entregado dicho cheque, giro, letra u orden, se considerará *prima facie* como propósito de defraudar".

*posteriori*, o sea, por hechos subsiguientes, cuál era la intención o el propósito que tuvo en su mente el librador de un cheque sin fondos en el momento de expedirlo o entregarlo a otra persona.

## III

En su escrito de *certiorari, y en cuanto al segundo señalamiento de error*, Gascot Cuadrado indica que

[e]n las denuncias no se señala, que el imputado tuviese la intención de defraudar, elemento esencial del delito y no puede surgir, pues esa intención no existió, pues desde que se emitieron los cheques, [la perjudicada] Spartan, parte interesada, sabía que los cheques no tenían fondos suficientes, *pues eran postdatados*. (Énfasis suplido.) Petición de *certiorari*, pág. 10.

El peticionario ancla su argumento en las decisiones emitidas por este Tribunal en *Pueblo v. Somarriba García*, ante, pág. 468, y en *Pueblo v. Cuevas*, 54 D.P.R. 301, 305 (1939). Sin embargo, y según indicáramos en *Pueblo v. McCloskey*, 164 D.P.R. 90 (2005), en los casos antes mencionados *no podía existir la intención de defraudar en las mentes de los imputados, porque ellos expresamente le habían indicado al receptor del cheque que éste no tenía fondos*. Esto es, el hecho —por sí solo— de que los cheques librados fueran, o no, postdatados *no* constituyó, en ninguno de los casos antes citados, parte esencial de la "razón de decidir" de este Tribunal.

No obstante lo expresado, debe tenerse en cuenta que, de ordinario, un cheque postdatado debe considerarse como una promesa de pago y no como un cheque propiamente dicho. Dicho de otra manera, aun cuando en el presente caso los instrumentos transferidos o entregados tenían la *forma* de un cheque, éstos *podrían* no ser considerados como tales precisamente por ser postdatados.

La Ley de Instrumentos Negociables, Ley Núm. 208 de 17 de agosto de 1995 (19 L.P.R.A. sec. 501 *et seq.*), define

"orden" como "una instrucción escrita de pagar una suma de dinero firmada por la persona que da la orden" y define "promesa" como "un compromiso escrito de pagar dinero suscrito por la persona que se obliga a pagar". 19 L.P.R.A. sec. 503(a)(9). Más adelante, se indica en dicha ley que "un instrumento [negociable] es un 'pagaré' si es una promesa y es un 'giro' si es una orden". Indica también dicho inciso que "si un instrumento cae bajo las definiciones tanto de un 'giro' como de un 'pagaré', la persona con derecho a exigir su cumplimiento puede tratarlo como cualquiera de los dos". 19 L.P.R.A. sec. 504(e). A su vez, en el inciso siguiente se equipara el cheque con el giro, salvo contadas excepciones. 19 L.P.R.A. sec. 504(f).

No debemos perder de vista que las definiciones antes relacionadas, *para efectos de la controversia penal ante nuestra consideración*, deben ser utilizadas como *guías* en relación con la determinación de si, en efecto, existió una *intención de defraudar* por parte del librador. *Para ello, es menester determinar cuál fue la verdadera intención y conducta de las partes al momento del libramiento y recibo del cheque, elemento sobre el cual no se pasó prueba en este caso ante el Tribunal de Primera Instancia.*

Si se probara, como sucedió en *Pueblo v. Somarriba García*, ante, que la entrega del cheque se hizo con la intención de que el instrumento sirviera de promesa de pago, y no como cheque propiamente dicho —*pues las partes estaban advertidas de que éste no tenía fondos*— procedería entonces la desestimación de la causa de acción por no haberse configurado el elemento subjetivo del delito.[4] *Si, por el contrario*, el cheque se hubiera tenido por las partes como una mera orden "pagadera a la presentación desde la fecha que ostenta", *Rivera v. Banco Crédito y Ahorro*, 86 D.P.R. 779, 781 (1962), *sin haberse advertido al tenedor del*

---

[4] La parte querellante tendría a su alcance, *no obstante*, la vía civil ordinaria para cobrar su acreencia, esto es, presentar una sencilla demanda en cobro de dinero.

*cheque que éste no tenía fondos, no* procedería entonces la desestimación, fundamentada *únicamente* en el hecho de que el cheque era postdatado.

La determinación sobre la verdadera naturaleza de los cheques entregados en este caso, al igual que la intención de las partes, *está sujeta, claro está, a la determinación que sobre los hechos realice el Tribunal de Primera Instancia en su día, luego de escuchar la prueba.*

## IV

En su primer señalamiento de error, el peticionario sostiene que procede la desestimación de la denuncia por razón de que no hubo la "interpelación" requerida por ley. *No tiene razón.* Basta con señalar que el peticionario no recibió la carta certificada que a esos efectos le enviara Spartan *debido a que éste, acomodaticiamente, no la reclamó en el correo, no obstante los avisos a esos efectos que la oficina postal le enviara.*

*No* podemos avalar tal actuación y planteamiento. El caos y desasosiego que ello causaría en el tráfico comercial en Puerto Rico, si así lo hiciéramos, sería inimaginable.

Llana y sencillamente, no habría persona que estuviera en disposición de aceptar un cheque en apoyo de un servicio o una deuda en vista del hecho que sería, prácticamente, imposible poder procesar a persona alguna por el delito de cheque sin fondo. Para demostrarlo, basta con un sencillo ejemplo: A expide un cheque por una cantidad de dinero a favor de B, sabiendo que no tiene fondos suficientes en su cuenta bancaria. Al ser depositado el cheque por B, el banco le informa a éste que no hay fondos. B le escribe a A una carta certificada, con acuse de recibo, en cumplimiento del requisito de interpelación. A, conociendo que el cheque que expidió iba a "rebotar" y que le iban a escribir al respecto, *sencillamente ignora, y no reclama, los avisos que le hace el correo federal sobre la existencia de una carta certificada dirigida a él.*

Conforme la "norma" propuesta por el peticionario, *A nunca podría ser acusado de la expedición de un cheque sin fondo por cuanto la interpelación nunca se entendería perfeccionada.* Ello resulta absurdo.

## V

No discutimos el tercer señalamiento de error. La posición que en éste sostiene el peticionario Gascot Cuadrado es similar a la que fue *rechazada* por este Tribunal en *Pueblo v. McCloskey*, ante. El razonamiento, o *ratio decidendi*, de dicho caso aplica a los hechos del caso ante nos.

## VI

Por los fundamentos antes expuestos, *se dicta Sentencia confirmatoria de la emitida por el Tribunal de Apelaciones y se devuelve el caso al Tribunal de Primera Instancia para procedimientos ulteriores compatibles con lo aquí resuelto.*

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo Interina. La Jueza Asociada Señora Fiol Matta emitió una opinión disidente. La Juez Asociada Señora Rodríguez Rodríguez concurrió en el resultado sin opinión escrita.

(*Fdo.*) Dimarie Alicea Lozada
*Secretaria del Tribunal Supremo Interina*

— O —

Opinión disidente emitida por la Jueza Asociada Señora Fiol Matta.

La sentencia de este Tribunal resuelve que el requisito de interpelación que impone el Art. 266 del Código Penal,

33 L.P.R.A. sec. 4553, se satisface al enviar una carta certificada, con acuse de recibo, aunque ésta no sea reclamada por el destinatario. Por los fundamentos que habré de exponer, disiento.

I

El señor Gascot entregó a Spartan Manufacturing Inc. (Spartan) dos cheques posdatados de $5,000 y $15,000 cada uno, para que Spartan construyera una vagoneta de acero a la medida, valorada en $43,000. Cuando Spartan presentó los cheques al cobro, resultó que la cuenta contra la cual se giraron no tenía fondos suficientes. Sin embargo, construyó la vagoneta según se le había ordenado.

El 29 de mayo de 2001, el gerente de Spartan envió una carta certificada, con acuse de recibo, a la dirección que el señor Gascot le había provisto. En ella requirió el pago de los cheques conforme lo dispone el Art. 266 del Código Penal, *supra*. El señor Gascot no recibió la carta, porque no reclamó su entrega en el correo.

El 7 de noviembre de 2001 se presentaron dos denuncias ante un magistrado, en las que se imputó al señor Gascot violaciones al Art. 264 del Código Penal, 33 L.P.R.A. sec. 4551, y se celebró la vista sobre determinación de causa para el arresto, según dispone la Regla 6 de Procedimiento Criminal, 34 L.P.R.A. Ap. II. Las denuncias presentadas por el Ministerio Público contra el señor Gascot le imputan haber expedido "ilegal, voluntaria, maliciosa y criminalmente ... el cheque #1133, por la cantidad de $5,000.00" y "el cheque #1215, por la cantidad de $15,000.00", ambos "a [la]orden de la Compañía Spartan Manufacturing Inc., del Banco Popular de P.R., a sabiendas que ... no tenía fondos suficientes ni crédito establecido en dicha institución para honrar[los] ... y a pesar de haber sido notificado, hizo caso omiso". Petición de *certiorari*, págs. 2–3.

El caso fue llamado para juicio el 17 de junio de 2002, pero el señor Gascot solicitó la desestimación de las denuncias, amparándose en la Regla 64(a), (b) y (p) de Procedimiento Criminal, 34 L.P.R.A. Ap. II. Alegó que, al presentar la denuncia, el Ministerio Público no había seguido el trámite especial de interpelación que dispone el Art. 266 del Código Penal, *supra*, motivo por el cual el tribunal carecía de jurisdicción. A su entender, como la carta certificada con acuse de recibo no fue recibida por él, era necesario hacer la interpelación personalmente, con la prueba de diligenciamiento. El Estado se opuso a dicha solicitud el 20 de junio de 2002 y el señor Gascot, a su vez, presentó una réplica a la oposición el 10 de julio de 2002. Finalmente, el 20 de agosto de 2002, el Tribunal de Primera Instancia declaró "no ha lugar" a la moción de desestimación, mediante una resolución en la que determinó los hechos que no estaban en controversia.

Inconforme, el peticionario acudió ante el entonces Tribunal de Circuito de Apelaciones con el propósito de que ese foro expidiera un auto de *certiorari* para revisar el dictamen de instancia, pero dicha petición fue denegada. El 15 de noviembre de 2002 compareció ante nosotros mediante un recurso de *certiorari*, en el que señaló varios errores alegadamente cometidos por los foros de instancia y apelativo; entre éstos, que habían errado al no desestimar las denuncias por falta de jurisdicción al no haberse hecho debidamente la interpelación.[1]

Expedimos el auto solicitado el 17 de enero de 2003, y el 23 de junio de 2003 el Procurador General presentó su alegato. Sostiene que el señor Gascot fue interpelado conforme lo dispone la ley, ya que "un requerimiento de pago debidamente realizado no puede estar sujeto a la disponi-

---

[1] En su petición de *certiorari* el señor Gascot alega que erraron también al determinar que los cheques emitidos por el recurrente fueron posdatados y que, por lo tanto, podía existir la intención de defraudar, y al no desestimar las denuncias como cuestión de derecho, pues la vagoneta fue vendida a otra persona —incluso a mayor precio— por lo cual Spartan no sufrió pérdidas económicas.

bilidad del librador para recibir su correspondencia o su decisión intencional de no recibirla". Alegato del Procurador General, págs. 6–7. Añade que en este caso, según surge del sobre que sometió como anejo el señor Gascot, lo que ocurrió no fue que él no recibió la carta por hallarse fuera de su hogar, sino que no acudió al correo a reclamar dicha correspondencia. En una nota al calce sugiere que acceder al planteamiento del señor Gascot restaría efectividad al modo de notificación o reclamación mediante envío por correo certificado con aviso de recibo, en el cual nuestro ordenamiento jurídico ha depositado su confianza. También señala que si favorecemos la posición del señor Gascot, estaríamos privando a la persona perjudicada de la opción que le ofrece el ordenamiento penal de escoger la manera en que realizará la interpelación. Por último, alega que ambas denuncias imputan el delito y la intención de defraudar que dispone la ley y que, contrario al argumento del señor Gascot, la contraprestación de bienes no es un elemento necesario para que se configure el delito de expedición de cheques sin fondos.

## II

El Art. 264 del Código Penal de 1974, *supra*, que rige la solución de este caso, dispone lo siguiente:[2]

Toda persona que con el propósito de defraudar a otra haga, extienda, endose o entregue un cheque, giro, letra u orden para el pago de dinero, a cargo de cualquier banco u otro de-

---

[2] Como resultado de la aprobación de la Ley Núm. 149 de 18 de junio de 2004 (33 L.P.R.A. sec. 4629 *et seq.*), se adoptó en Puerto Rico un nuevo Código Penal, vigente desde el 1 de mayo de 2005. Las secciones pertinentes a la expedición de instrumentos sin fondos se clasifican bajo el capítulo de "Delitos contra seguridad en las transacciones" y se encuentran codificadas en los Arts. 229 al 235 (33 L.P.R.A. secs. 4857–4863). En específico, los Arts. 266 y 267 del derogado Código de 1974, 33 L.P.R.A. secs. 4553 y 4554, que tratan de la interpelación, son ahora los Arts. 232 y 233 del Código Penal, 33 L.P.R.A. secs. 4860 y 4861, y fueron transcritos sin ninguna enmienda bajo el mismo título de interpelación. Véase D. Nevares-Muñiz, *Nuevo Código Penal de Puerto Rico*, San Juan, Ed. Inst. Desarrollo del Derecho, 2004, págs. 289-293.

positario, a sabiendas de que el emisor o girador no tiene suficiente provisión de fondos en dicho banco o depositario para el pago total del cheque, giro, letra u orden, a la presentación del mismo, ni disfruta de autorización expresa para girar en descubierto, será sancionada con multa hasta el doble del importe de dicho cheque, giro, letra u orden, pero nunca mayor de cinco mil (5,000) dólares, o pena de reclusión de un día por cada cincuenta (50) dólares que deje de satisfacer hasta un máximo de noventa (90) días, o ambas penas a discreción del tribunal. El tribunal podrá imponer además la pena de restitución.

De esa forma, tipifica la expedición de cheques sin fondos como una conducta delictiva, cuyos elementos esenciales son: "(1) el hacer, extender, endosar, o entregar un cheque, giro, letra u orden de pago de dinero, a cargo de cualquier banco; (2) el conocimiento, al hacerlo, de que el emisor o girador no tiene suficientes fondos para el pago y (3) el propósito de defraudar." *Valentín v. Torres*, 80 D.P.R. 463, 477 (1958). Como vemos, el elemento subjetivo —de la intención de defraudar— tiene que estar presente para que se configure este delito. Desde hace muchos años resolvimos que "[s]in esa alegación del propósito específico de defraudar, la acusación [sería] insuficiente ...". *Pueblo v. Cuevas*, 54 D.P.R. 301, 304 (1939). Al ser un elemento esencial del delito, el propósito de defraudar tiene que alegarse en la acusación y establecerse por la prueba desfilada. *Pueblo v. Cuevas*, supra, pág. 309.

Sin embargo, el Código Penal también requiere, como requisito *sine qua non*, previo a la presentación de la denuncia, un aviso y requerimiento de pago, denominado interpelación, que concede al interpelado un término mínimo específico para saldar la deuda. En efecto, este delito *"no se consuma* hasta que vence el término de la interpelación". (Énfasis suplido.) D. Nevares-Muñiz, *Código Penal de Puerto Rico: revisado y comentado*, San Juan, Ed. Inst. Desarrollo del Derecho, 2000, pág. 526. El requisito de la interpelación se encuentra en el Art. 266 del Código Penal de 1974, *supra*, que transcribimos a continuación:

Ninguna persona será sancionada de acuerdo a la sec. 4552 de este título a menos que se pruebe, a satisfacción del tribunal, que el tenedor del cheque, giro, letra u orden, o su agente, *ha avisado personalmente o mediante carta certificada con acuse de recibo al girador y al endosante a su última dirección conocida* para que pague al tenedor, o a su agente, en la dirección que se indicará en el aviso, el importe del cheque, giro, letra u orden dentro de un plazo no menor de diez (10) días laborables si el girador o endosante a quien se dirige el aviso residiere en la localidad del tenedor y no menor de quince (15) días laborables si residiere en otro municipio o fuera del Estado Libre Asociado de Puerto Rico. Dicho término se computará desde la fecha del aviso al girador o endosante del cheque, giro, letra u orden no pagada.

Si la dirección que proveyó el girador o endosante es falsa o si rehusó proveer una dirección física además de la postal al momento de emitir el cheque, giro, letra u orden, se entenderá que el aviso del banco o depositario a los efectos de que el cheque, giro, letra u orden resultó con fondos insuficientes, constituye notificación suficiente conforme a los dispuesto en el primer párrafo de esta sección. (Énfasis suplido.)

Adviértase que esta sección no señala término alguno dentro del cual deba requerirse el pago del cheque librado sin fondos. *Caballero v. Tribunal Superior*, 81 D.P.R. 689 (1960). Ahora bien, al avisarse al girador o endosante, se activa un término de gracia que será no menor de diez o quince días, dependiendo de su lugar de residencia. La falta de pago durante el plazo concedido "se considerará prima facie como propósito de defraudar". Art. 267 del Código Penal, 33 L.P.R.A. sec. 4554. Es decir, si el girador o endosante, que es interpelado debidamente, no paga el cheque dentro del término concedido, se activa la presunción de que libró el cheque con la intención de defraudar, elemento esencial del delito.[3] El Código Penal también dispone que, cuando alguien prepara y entrega un cheque

---

[3] Nótese que, por su naturaleza intangible, la intención es en muchas ocasiones difícil de probar, lo que provoca que la interpelación realizada debidamente tenga un rol fundamental. Sobre la controversia que genera el efecto de las presunciones en contra del acusado, véase la Regla 15 de Evidencia de Puerto Rico, 32 L.P.R.A. Ap. IV; E.L. Chiesa, *Tratado de Derecho Probatorio*, San Juan, Pubs. J.T.S., 1998, T. II, págs. 1099-1102.

que el girado rehúsa pagar por insuficiencia de fondos, se crea una presunción *juris tantum* de que el librador del cheque conocía de la insuficiencia. Art. 265 del Código Penal, 33 L.P.R.A. sec. 4552.

El requisito de la interpelación previa, establecido en el citado Art. 266, proviene de la Sec. 4 de la Ley Núm. 26 de 25 de abril de 1934 (33 L.P.R.A. sec. 1854). Esta ley fue presentada por el senador Iriarte y aprobada unánimemente, sin ulterior discusión. Véase las Actas de la Cámara de Representantes de Puerto Rico, Segunda Legislatura Ordinaria, Decimotercera Asamblea Legislativa, págs. 752, 783, 938, 940, 943, 945 y 995 (1934). La Ley Núm. 26, *supra*, no contiene una Exposición de Motivos, pero resulta interesante una carta contemporánea a su aprobación, a la cual hace referencia el Prof. José Miró Cardona, en la que el Tesorero de Puerto Rico explica al Gobernador que la aprobación de la ley era necesaria

> ... para aumentar la protección en contra y parar el crecimiento de la práctica perniciosa de expedir y negociar cheques malos *con la intención de defraudar*; definiendo lo que constituye este crimen particular y proveyendo un castigo adecuado. Nuestras leyes hacen un delito de obtener dinero o propiedades por medio de falsas representaciones o engaños, pero estas leyes tienen muchos escapes; y el proyecto del Senado número 258 bajo consideración, sin duda alguna pondrá fin a estas prácticas. Por estas razones recomiendo que el Gobernador apruebe el proyecto del Senado 258 bajo consideración. (Énfasis suplido.) J. Miró Cardona, *Borrador y notas explicativas al Proyecto de Código Penal redactado por Francisco Pagán Rodríguez*, 1967, pág. 259.

La primera ocasión que tuvimos para interpretar la Sec. 4 de la Ley Núm. 26, *supra*, fue en 1939, en *Pueblo v. Cuevas*, supra. Expusimos entonces lo siguiente:

> El propósito claro y evidente de la sección 4, supra, es proveer un procedimiento para comprobar *a posteriori* o sea por hechos subsiguientes cuál era la intención o propósito que tuviera en su mente el librador de un cheque sin fondos en el momento de expedirlo y entregarlo a otra persona. Siendo la intención o

propósito con que se realiza un acto, una función subjetiva y como tal imposible de ser probada objetivamente, el legislador se vió en la necesidad de dictar reglas de evidencia por virtud de las cuales el juzgador puede deducir conclusiones o establecer presunciones en contra del acusado, basándolas en la conducta o manifestaciones de éste tanto en el momento de expedir el cheque como después de haber sido notificado de su rechazamiento. Miró Cardona, *op. cit.*, pág. 305.

La carta del Tesorero antes citada y nuestra jurisprudencia exponen, con claridad meridiana, que el elemento subjetivo de intención de defraudar siempre se consideró un elemento esencial del delito tipificado. Las presunciones establecidas en la Sec. 4 de entonces y el Art. 266 vigente, *supra*, son medios que el Derecho utiliza para evidenciar tal condición subjetiva.[4]

Originalmente, los artículos relacionados con la expedición de cheques sin fondos estaban ubicados en el capítulo sobre "Delitos contra la Propiedad" del Código Penal de 1937 (33 L.P.R.A. secs. 1851–1856). El procedimiento denominado entonces en la ley como "Aviso a girador o endosador", y en nuestras decisiones como "requerimiento de pago", tan sólo vislumbraba la posibilidad de que el aviso se realizara personalmente. 33 L.P.R.A. sec. 1854; *Valentín v. Torres*, supra. Es más adelante, con la aprobación del Código Penal de 1974, que se clasifican estas disposiciones bajo el acápite de "Delitos contra la Fe Pública", 33 L.P.R.A. secs. 4551–4555, y el legislador denomina el proceso de aviso como "interpelación", a la vez que lo modifica en ciertos aspectos. Véase M. López-Rey y Arrojo, *Estudio penal y criminológico del proyecto oficial de Código Penal de 1967 para Puerto Rico: La reforma penal en Puerto Rico*, San Juan, Comisión de Derechos Civiles, 1967, pág. 185. Dentro de estas modificaciones observamos que se añadió

---

[4] Con ello discrepamos del aserto del profesor Miró Cardona de que "el propósito no expresado ... de la ley vigente fue tutelar el cheque en sí mismo considerado, con abstracción de las motivaciones o propósitos del librador". J. Miró Cardona, *Borrador y notas explicativas al Proyecto de Código Penal redactado por Francisco Pagán Rodríguez*, 1967, pág. 265.

la posibilidad de realizar la interpelación mediante el mecanismo de correo certificado con aviso de recibo. Nevares-Muñiz, *op. cit.*, 1986, pág. 438.

Según dispone el Art. 267 del Código Penal de 1974, *supra*, una vez se completa el proceso de la interpelación y la persona interpelada no responde satisfaciendo la cantidad adeudada, esa falta de pago se considerará, *prima facie*, como prueba del propósito de defraudar. De hecho, el incumplimiento de esta condición precedente y jurisdiccional ocasiona que el tribunal se encuentre impedido de procesar a una persona por este delito. *Valentín v. Torres*, supra, pág. 479. Según el análisis editorial de la profesora Nevares-Muñiz:

> En su estructura básica por un lado hay una acción antijurídica que consiste en extender, hacer, endosar, o entregar el cheque u orden de pago y por otro lado hay un acto de omisión que consiste en no pagar después que se le ha solicitado mediante el procedimiento de interpelación. Nevares-Muñiz, *op. cit.*, 2000, pág. 526.

Transcurrido el término concedido en el aviso de interpelación, la parte perjudicada podrá acudir a la Fiscalía de distrito para presentar una denuncia; allí se expedirá la citación dirigida al imputado para que comparezca a una vista de causa probable. Art. 268 del Código Penal, 33 L.P.R.A. sec. 4555. En ese momento se activa la segunda oportunidad concedida por el legislador a las personas que incurren en esta conducta para liberarse de los cargos mediante el pago. A esos efectos, el Art. 268, *supra*, dispone que "[e]l pago del cheque, giro, letra u orden de pago, previo a la vista de causa probable, relevará de responsabilidad criminal a la persona que hubiere emitido o endosado dicho cheque, giro, u orden ...".

## III

Es una regla firmemente arraigada en nuestro sistema de derecho, como corolario del principio de legalidad, que los estatutos penales serán interpretados de manera restrictiva en lo que desfavorezca al acusado, y liberalmente en cuanto a lo que le favorezca. *Pueblo v. Bonilla*, 148 D.P.R. 486, 522 (1999); *Pueblo v. Zayas Rodríguez*, 147 D.P.R. 530, 549 (1999); *Pueblo v. Martínez Rivera*, 144 D.P.R. 631, 651 (1997); *Pueblo v. Sierra Rodríguez*, 137 D.P.R. 903, 908 (1995); *Pueblo v. Arandes de Celis*, 120 D.P.R. 530, 538 (1988); *Mari Bras v. Alcaide*, 100 D.P.R. 506, 516 (1972); *Pueblo v. Mantilla*, 71 D.P.R. 36 (1950). Este llamado a la interpretación estricta no significa, sin embargo, que las leyes penales estén exentas de interpretación, puesto que todas las leyes, incluso las más claras, requieren cierto grado de interpretación. *Pueblo v. Martínez*, 159 D.P.R. 194 (2003); *Pueblo v. Sierra Rodríguez*, supra, pág. 906; *Pueblo v. Tribl. Superior*, 81 D.P.R. 763, 788 (1960). En *Pueblo v. Zayas Rodríguez*, supra, pág. 549, manifestamos que "la regla de oro en materia de interpretación de leyes es que el objeto principal de todas las reglas de hermenéutica no es conseguir un objetivo arbitrario preconcebido, sino dar efecto al propósito del legislador". De esa forma, "nuestra obligación es hacer viable que el derecho sirva un fin útil y tratar de *evitar aquella interpretación tan literal que lleve a resultados absurdos*". (Énfasis suplido.) *Pueblo v. Barreto Rohena*, 149 D.P.R. 718, 722 (1999).

Para atender la controversia ante nuestra consideración debemos, en primer lugar, definir el significado del término "aviso", según se utiliza en el Art. 266 del Código Penal, *supra*.(5) Claramente, el estatuto establece que el aviso contendrá el requerimiento de pago, incluyendo el término

---

(5) Lo hacemos atendiendo al Art. 6 del Código Penal de 1974 (33 L.P.R.A. sec. 3021). Éste dispone, en lo que a nosotros nos concierne, que las palabras y frases se

concedido para ello que, según vimos, no debe ser menor de diez o quince días, dependiendo del lugar de la residencia del girador o endosante. El aviso se hará "personalmente o mediante carta certificada *con acuse de recibo* al girador y al endosante a su última dirección conocida". (Énfasis suplido.) Art. 266 del Código Penal, *supra*. En *Pueblo v. Somarriba García*, 131 D.P.R. 462, 470 (1992), resolvimos que en el aviso se debe indicar tanto el lugar del pago como su importe y que, aunque se haga personalmente, también debe hacerse por escrito, pues "[c]ualquier otra interpretación resultaría contraria al propósito que persigue el requisito de interpelación dispuesto en el mencionado estatuto". Íd., pág. 470. Con esta decisión, nos negamos a aceptar el argumento del Ministerio Fiscal de que un requerimiento personal *verbal* cumplía con los criterios de la interpelación.(6)

Considerado todo lo anterior, concluimos que el "aviso" requerido por el Art. 266 del Código Penal, *supra*, es *el*

---

interpretarán de acuerdo con el contexto y significado sancionado por el uso común y corriente. El Art. 13 del Código Penal de 2004 vigente, 33 L.P.R.A. sec. 4641, contiene una disposición similar. Hemos explicado que esta escueta directriz "contiene los dos (2) criterios que serán aplicados en la interpretación judicial de los estatutos penales: la interpretación gramatical y la interpretación declarativa". *Pueblo v. Sierra Rodríguez*, 137 D.P.R. 903, 907 (1995). Véase D. Nevares-Muñiz, *Derecho Penal Puertorriqueño: Parte General*, San Juan, Ed. Inst. Desarrollo del Derecho, 1983, pág. 106. La remisión al "significado sancionado por el uso común y corriente" obedece al criterio de interpretación gramatical, que requiere examinar la sintaxis y el significado gramatical de las palabras, según el uso corriente. *Pueblo v. Sierra Rodríguez*, supra, pág. 906. El criterio de interpretación declarativa alude a "la correspondencia exacta entre las palabras y el espíritu de la ley". *Pueblo v. Sierra Rodríguez*, supra, pág. 907. De esa forma, busca aplicar la ley de acuerdo con la intención del legislador, examinando el sentido estricto de las palabras (interpretación restrictiva) y si esto no da frutos, los documentos que acompañaron al proyecto durante el proceso de convertirlo en ley (interpretación extensiva). *Pueblo v. Sierra Rodríguez*, supra, págs. 908–909, citando a Nevares-Muñiz, *op. cit.*, pág. 96. Todo ello con la precaución de no caer en la analogía, vedada en ese proceso. Véase Art. 3 del Código Penal de 2004 (33 L.P.R.A. sec. 4631). Véanse, además, los comentarios de la profesora Nevares-Muñiz al Art. 13 del Código Penal de 2004 (33 L.P.R.A. sec. 4641). Nevares-Muñiz, *Nuevo Código Penal de Puerto Rico, op. cit.*, págs. 15–17.

(6) En el caso que hoy examinamos, el Ministerio Público alega, en su Moción en Oposición a Desestimación al Amparo de la Regla 64 de Procedimiento Criminal, que la buena fe de la recurrida, Spartan Manufacturing Inc., se reflejaba en que ésta hizo varias llamadas telefónicas al imputado. A la luz de lo resuelto en *Pueblo v. Somarriba García*, 131 D.P.R. 462 (1992), este planteamiento no merece mayor consideración.

*documento escrito en el cual el tenedor del cheque, giro, letra u orden reclama el pago* al girador o endosante del instrumento sin fondos.

Examinemos ahora la controversia sobre el envío del aviso a través del servicio postal de correo certificado con acuse. En *Santiago v. Supte. Policía de P.R.*, 151 D.P.R. 517 (2000), tuvimos la oportunidad de evaluar la validez de una notificación con acuse no reclamada (*unclaimed*), en el contexto del proceso de confiscación dispuesto en la Ley Uniforme de Confiscaciones de 1988, Ley Núm. 93 de 13 de julio de 1988 (34 L.P.R.A. sec. 1723 *et seq.*). Al interpretar este estatuto confiscatorio, cuyo carácter es civil e *in rem*, lo hicimos *restrictivamente* debido al carácter punitivo del proceso. *Santiago v. Supte. Policía de P.R.*, supra, pág. 515. Decidimos revocar al foro apelativo intermedio, que había concluido que el Estado cumplía con su obligación de notificar la confiscación al depositar la notificación en el correo, aunque el estatuto requería el envío mediante certificación con acuse de recibo. Concluimos que el término de quince días para instar la demanda para impugnar una confiscación comenzaba *"desde que la persona notificada recibió la notificación; es decir a partir de la fecha que surge del acuse de la notificación"*. (Énfasis en el original.) Íd., pág. 517. En esta decisión continuamos en el rumbo establecido en *García v. Tribunal Superior*, 91 D.P.R. 153, 156 (1964), donde al interpretar la antigua ley de confiscaciones, que tenía un lenguaje similar, expresamos:

> ... Dos son los elementos para el perfeccionamiento: — el envío por correo y acuse de recibo. *No podemos estar de acuerdo en que basta el depósito en el correo para que se entienda perfeccionada la notificación. Si fuera así, resultaría enteramente superfluo lo de acuse de recibo, y el Legislador no hace cosas inútiles.*
>
> Estipulado por las partes que como cuestión de hecho la notificación puesta en el correo se le entregó al peticionario el 1ro de julio de 1963, ahí ocurrió el acuse de recibo, o sea, tuvo lugar el segundo factor del perfeccionamiento. (Énfasis suplido.)

Hemos determinado también en la esfera civil que la mala fe de un codemandando, "al esconderse y no dejarse emplazar", no constituye justa causa para incumplir con el término para diligenciar un emplazamiento. Expresamos en la opinión *per curiam* en ese caso que nuestro ordenamiento "pone todas las exigencias y requisitos sobre los hombros del demandante, no sobre los del demandado", y resolvimos que éste no está obligado a cooperar con el demandante en el diligenciamiento del emplazamiento. *First Bank of P.R. v. Inmob. Nac., Inc.*, 144 D.P.R. 901, 916 (1988). Nuestra determinación se fundamentó, primero, en la política pública que favorece que un ciudadano sea emplazado conforme a derecho, para evitar el fraude y el uso de los procedimientos judiciales para privarlo de su propiedad sin un debido proceso de ley. En segundo lugar, tomamos en consideración que el diligenciamiento personal no es el único método para emplazar, por lo cual se pueden usar otros medios para diligenciar el emplazamiento sin violar el debido proceso de ley. Ambos criterios aplican similarmente a esta controversia.

## IV

En este caso, el foro apelativo intermedio avaló la interpretación de instancia a los efectos de que el Art. 266 del Código Penal, *supra*, no requiere que la carta sea recibida por el girador, concluyendo que es suficiente un "correcto envío" para cumplir con este requisito. La razón para ello, explicada por el foro de instancia y aceptada por el entonces Tribunal de Circuito Apelaciones, fue la necesidad de evitar que se burlara la jurisdicción del tribunal "con meramente no recibir o no reclamar, intencionalmente, una carta certificada que contiene una interpelación y que es remitida a la dirección del girador". Relación del caso, determinaciones de hechos, conclusiones de derecho y resolución, pág. 4. Ambos foros concluyeron que ese sería el re-

sultado de exigir el recibo del aviso. La Mayoría de este Tribunal acepta este criterio en su sentencia.

No estamos de acuerdo. Nos parece evidente que una notificación de correspondencia, pendiente de entregar, no agota el requisito de interpelación. Si el girador o endosante no recibe el documento, no hay verdadera reclamación de pago y, por lo tanto, no hay el "aviso" requerido por el legislador. Hemos resuelto que si el tenedor opta por la entrega personal al girador o endosante, la reclamación debe constar por escrito. De igual forma, implícito en la autorización para notificar de manera no personal, mediante correo certificado con acuse de recibo, está el que se logre entregar la reclamación constitutiva del aviso requerido.

La notificación que el servicio postal entrega, como parte de su servicio de correo certificado, para informar al destinatario que hay una correspondencia a su nombre que debe reclamar en determinada estación del correo, es tan sólo un proceso interno del correo y no contiene la información que requiere el Art. 266 del Código Penal de 1974, *supra.*([7]) No constituye, pues, el "aviso" requerido para la interpelación. Concluimos que el "aviso" es el documento escrito cuya entrega se requiere, mientras que el correo certificado con acuse es uno de los medios que puede utilizarse para entregarlo, siendo la segunda alternativa la entrega personal. La entrega del aviso al girador o endosante, ya sea personalmente o por correo certificado con acuse, completa el proceso requerido de interpelación.

El Procurador General propone que la intención legislativa al autorizar la notificación "mediante carta certificada con acuse de recibo" se circunscribía a asegurar el envío de la carta, menospreciando así la importancia de que la persona interpelada conozca su contenido. No podemos avalar esta interpretación. Recordemos que quien viene llamado a cumplir estrictamente las exigencias de este estatuto es la

---

([7]) Art. 232 del Código Penal de 2004, *supra.*

alegada víctima, no la persona a quien se imputa haber expedido el cheque sin fondos. Más aún, el legislador claramente dispuso que ninguna persona será castigada por el delito tipificado en el Art. 265, *supra*, a menos que se pruebe, a satisfacción del tribunal, que la interpelación se hizo correctamente.

Concluimos que para perfeccionar la interpelación requerida por el Art. 266 del Código Penal, *supra, es imprescindible que, cuando se utilice la vía de correo certificado, la persona interpelada reciba la notificación*, hecho que quedará probado con la fecha de entrega que aparezca en el acuse de recibo. *De no lograrse el recibo, se deberá utilizar la alternativa de notificación personal dispuesta por ley.*

Debemos señalar que otras jurisdicciones han usado este criterio al interpretar el requisito de interpelación para configurar el delito de expedición de cheques sin fondos. A modo de ejemplo, véase la opinión del Tribunal Supremo del estado de Georgia en *Hall v. State*, 244 Ga. 86 (1979). En ese caso, el estatuto de interpelación, a diferencia del nuestro, literalmente disponía que, aunque la notificación enviada por correo certificado no fuera reclamada, la falta de pago dentro de los diez días del aviso se consideraría como evidencia *prima facie* de que el acusado sabía que el instrumento no sería honrado. La peticionaria fue acusada y convicta por ocho cargos de expedición de cheques sin fondos (cada uno de los cargos trataba sobre un cheque distinto). Dos de estos cheques fueron expedidos en una tienda, de donde enviaron por correo certificado el aviso para requerirle el pago. Al igual que en este caso, el sobre utilizado para enviar el aviso fue devuelto sin reclamar. El Tribunal Supremo estatal concluyó que "la presunción de que se ha recibido la notificación *cuando en realidad ésta fue devuelta sin entregar es irracional y parte de hechos que demuestran lo contrario.* Por lo tanto, la frase 'si esa notificacón se devuelve sin entregar o no ...' es

tan abritraria que viola el debido proceso de ley". (Traducción nuestra.) *Hall v. State*, supra, págs. 88–89.

Reiteramos que es necesario corroborar que la persona realmente está informada del contenido del aviso, cónsono con los fundamentos de nuestra decisión en *Pueblo v. Somarriba García*, supra. De la misma forma que allí resolvimos que una notificación verbal para requerir el pago no es suficiente cuando se utiliza el método de notificación personal, una carta no reclamada ("unclaimed") no satisface el requisito de la interpelación cuando se utiliza el método del envío por correo certificado con acuse.

En el caso que nos ocupa, la parte recurrida no presentó prueba concluyente de que hizo la interpelación. Al contrario, la prueba, consistente de una carta devuelta por falta de reclamación, demostró que no se interpeló al girador según requiere la ley. Por eso, resolveríamos que el término de diez o quince días concedidos en el aviso al librador o endosante para pagar, dependiendo del lugar de su residencia, nunca comenzó a decursar. Así las cosas, el delito no fue consumado.

Habiéndose presentado la denuncia sin cumplimentar el requisito previo de la interpelación, resolvería que el Tribunal de Primera Instancia carece de jurisdicción para procesar al señor Gascot, por lo cual debió haber declarado "con lugar" la moción de desestimación presentada al amparo de la Regla 64(b) de Procedimiento Criminal, *supra*. Como no lo hizo, revocaría la resolución recurrida y desestimaría la acusación.